STATE OF INDIANA *v.* VALLEY DEVELOPMENT CO., INC.

[No. 668S97. Filed April 6, 1971. Rehearing denied June 2, 1971.]

*John J. Dillon,* Former Attorney General, *Robert F. Hassett, Duejean C. Garrett,* Deputies Attorney General, for appellant.

*Ben J. Weaver, Charles G. Reeder, Johnson, Weaver & Martz,* of Indianapolis, for appellee.

DEBRULER, J.—This is an appeal from a decision of the Marion Superior Court wherein that court granted appellee's motion for new trial.

Pursuant to I.C. 1971, 32-11-1-1 and 8-11-1-5, being Burns §§ 3-1701 and 36-3105, the appellant, State of Indiana, brought a condemnation action to appropriate a 16½ acre portion of a 77 acre tract of real estate owned by appellee for purpose of interstate highway construction. Court appointed appraisers reported total damages to appellee to be $165,480.00. Appellant and appellee both filed exceptions to the report of the appraisers. At the request of appellee this cause was submitted to trial by jury. The jury returned a verdict in favor of the appellee in the sum of $70,000.00 plus interest. Appellee then filed a motion for new trial citing fifteen specifications of alleged error. The trial court granted appellee's motion for new trial citing as its grounds specifications 1 and 14 of the motion for new trial which read as follows:

"1. Error of law occurring at the trial, as follows:

a. The Court erred in overruling the objection propounded by the defendant to a question asked of the defendant, by the plaintiff, in Cross-Examination, said question asked, the objection made, argument of counsel, the Court's ruling and the defendant's answer are as follows:

'Q. How much did you pay for the property?

OBJECTION BY MR. WEAVER: We're going to object to that your honor. This was purchased in 1956, I believe your honor. I believe it's too far away from the date of February 1, 1964 and therefore is irrelevant and immaterial.

MR. MAGNUSON: I believe that goes to the weight of the evidence, your honor, rather than the admissability. It certainly is a comparable since it is the same subject.

MR. WEAVER: Well, I know, your honor, but to be a comparable it must be more closely related to the taking date which by agreement is February 1, 1964. It was purchased back in 1956 regardless whether it goes to the weight or anything else. It is clearly not admissible.

MR. MAGNUSON: It goes to the weight rather than the admissability.

THE COURT: Objection over-ruled. You may answer.

Q. How much did you pay for the property, Mr. Valinet?

A. $125,000.' "

"14. Error of law occurring at the trial, as follows:

a. The Court erred in giving to the Jury, at the request of the plaintiff, plaintiff's instruction number 9, said instruction being objected to by the defendant within the proper time which objections were made part of the record, said instruction and the objections thereto being as follows:

'Evidence has been received as to the purchase price of the subject property when acquired by the defendant. Purchase of the land by the defendant constitutes one transaction in the vicinity which you may consider, along with the other evidence. In arriving at your conclusion as to the fair market value of the property at the time of taking.'

The defendant objected to the giving of this instruction and the defendant's objections were as follows:

'Defendant excepts and objects to the giving of Plaintiff's Tendered Final Instruction Number Nine (9) for the following reasons:

We objected in the course of the trial to the question as originally asked to which the Court allowed the answer to go in, that the purchase price for this property was $125,000.

The purchase of the subject property was seven years and two months prior to the take. This is too remote in time to the take. The instruction number nine (9) places too much emphasis on this transaction by pointing the Jury's attention to the fact that the Defendant paid $125,-000 for the property and the evidence is that they have been damaged in the sum of $305,000 now.'

The instruction is prejudicial because of these reasons:

'Defendant further excepts to the Court's giving Instruction Number Nine (9) for the further reason that it places undue emphasis on this one purchase and singles it out from the many other transactions which occurred more closely in time and there are in the record more than the one here in question.

Defendant further takes exception to the giving of Plaintiff's Tendered Final Instruction Number Nine (9) on the grounds that it places too much emphasis on only one factor in determining damages which should be awarded to the Defendant for the State's taking.

Defendant further takes exception to the giving of Plaintiff's Final Instruction Number Nine (9) for the reason that all the elements of damages are adequately covered elsewhere in the Court's instructions.' "

The issue before us for decision is: Is the purchase price, paid for the subject property, by the defendant-landowner, seven years and two months before the taking, inadmissible on the ground of remoteness? Generally, such evidence is admissible as tending to prove the value of the land on the day of the take. *Indianapolis and Cincinnati Traction Co.* v. *Shepherd* (1905), 35 Ind. App. 601, 74 N. E. 904. The general rule appears in 18 Am. Jur., *Eminent Domain*, § 351 at p. 955 as follows:

"When a parcel of land is taken by eminent domain it is competent, as evidence of its market value, to show the price at which it was bought, and *not so remote in time as to have no bearing upon the question of the present value.*" (Emphasis added.)

Appellee does not contend here that the sale of the subject property was not a voluntary, arms-length transaction, or that it was precluded at the trial in any way from explaining the nature of the transaction. Neither does it contend that it was limited in any manner at the trial from demonstrating changing conditions, on or off its land, occurring during this seven year period which might have had a bearing on the value of its property. The appellee's claim is unaccompanied and unsupported by any other claim or argument. We hold that this evidence of the price paid for the subject property by the defendant-landowner, seven years and two months prior to the take was not rendered inadmissible solely upon the grounds of the passage of that period of time. That evidence did bear upon the value of the subject property on the date of the take.

The ruling of the trial court at the trial, overruling appellee's objection on the sole ground of remoteness, could not have been error warranting the granting of a new trial. Neither do we find merit in appellee's objections to the trial court's giving of plaintiff's tendered instruction number 9.

The trial court, therefore, erred in granting appellee a new trial on specifications 1 and 14 of the motion for new trial.

The trial court is ordered to set aside its order granting appellee's motion for a new trial, and is ordered to deny same.

Arterburn, C.J., Givan and Hunter, JJ., concur; Prentice, J., dissents with opinion.

### DISSENTING OPINION

PRENTICE, J.—I believe that the majority opinion has failed to consider that this appeal is from a ruling of the trial court granting the motion for a new trial as opposed to one overruling such motion. Under the general rule, as first laid down in

*Nagle* v. *Hornberger* (1854), 6 Ind. 69, an appellate court will always more readily control the discretion of the court below in refusing a new trial than in granting it, because the refusal operates as a final adjudication of the rights of the parties, and the granting of a new trial by the trial court is a question of sound discretion which will not be disturbed in the appellate court unless a flagrant case of injustice is made to appear. This rule has been followed in *Leppar* v. *Enderton* (1857), 9 Ind. 353; *Lowry* v. *Indianapolis Traction and Terminal Co.* (1920), 77 Ind. App. 138, 126 N. E. 223; *Topper* v. *Dunn* (1961), 132 Ind. App. 306, 177 N. E. 2d 382; *Rans* v. *Pennsylvania Railroad Co.* (1963), 136 Ind. App. 1, 194 N. E. 2d 828, and *Stinson* v. *Mettert* (1967), 141 Ind. App. 354, 228 N. E. 2d 43.

In the *Lowry* case the court further said on the subject "Where a new trial has been granted, a much stronger case must be made for the interference of the court on appeal, than when it is refused. In the trial court, it must clearly appear that substantial justice has been done or a new trial should be granted. On appeal it must clearly appear that substantial justice has not been done or the judgment should be affirmed."

In the *Rans* and *Stinson* cases, cited above, our Appellate Court has stated the rule as follows:

> "To authorize a reversal of an order granting a new trial, three things must be shown: 1. That there was a plain abuse of judicial discretion. 2. That flagrant injustice has been done the complaining party. 3. A very strong case for relief."

Under these guidelines I fail to see where this Court is warranted in substituting its judgment for that of the trial court.

Judge Hunter in the case of *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N. E. 2d 486 has eloquently stated the necessity for the rule in the following language:

> "The warp and woof of the fabric of our judicial system which guarantee all citizens equal justice under the law depend upon the maintenance of a pattern of judicial respon-

sibility, restraint, and an absolute and conscientious adherence to the rules governing our judicial tribunals at each level. The structure of our judicial system rests upon the solid foundation of our trial courts at every level of government. The keystone of justice in our system is the trial court, thus if it is to be accomplished under the law, it must be attained first at the trial court level. If the trial courts and the appellate tribunals will remain steadfast to the rules governing their respective duties and functions, substantial justice will be done insofar as human agencies are capable of its accomplishment.

The power of the trial judge to examine the whole case with a view toward securing a result not merely legal, but which also manifests justice, is a power not in derogation of the right to trial by jury as urged by the appellant; quite the contrary, is one of the historic safeguards of that right. This power, if exercised in pursuance of sound judicial discretion, is a power without which our jury system might become a capricious, fickle and intolerable tyranny under which no system of jurisprudence in a free society could long survive."

The rule permitting the introduction of evidence as to the price paid for the condemned real estate on a voluntary sale prior to the proceedings, but not too remote in point of time and not otherwise shown to have no probative value, appears to be the rule in most jurisdictions including the State of Indiana. I question the wisdom of this rule and would apply it sparingly. The proponents of the rule justify it upon the premise that the opposite party may introduce evidence to explain the circumstances of the sale, which is true but nevertheless of little comfort. Granted a seller knows his own circumstances, why he is willing to sell and how much he will take, and a purchaser knows why he is willing to buy and how much he will pay, but what does either know about the motivation of the other. So many factors, not generally known or ascertainable to those not privy to the affairs of the participants, may enter into the sale price of real estate as to render the actual price little, if any, evidence of a market value. The seller may be in financial distress, or he may have offsetting income tax considerations that compel him to sell

at an unusually low price. The buyer may be willing to buy only if he obtains an unusual bargain, or he may be willing to pay a premium because the property particularly suits his special purpose or because he has advantageous financing available. Perhaps he is looking forward to a preferential income tax treatment on an anticipated future sale. Such factors as these are not likely to be made known by competing parties, and this is what the purchaser and seller are. Nevertheless, in a condemnation case, such a sale is considered "voluntary" for the purposes of determining its admissibility as evidence. These same difficulties are inherent in any transaction and thus would apply as well to "comparable" sales. The difference, however, lies in the weight accorded the evidence by the jury. The jury in a condemnation case is not being required to determine a factual situation but rather to give an opinion—an opinion which, at best, it is ill-equipped to render. It is being plied with widely divergent expert opinions and evidence of comparison sales, neither of which it feels qualified to evaluate. Under these circumstances, I think that evidence of the price paid by the condemnee for the same property has such an impact as to be highly prejudicial. This is true without regard to how recent the transaction. It is loaded with what might be termed "overkill". And to say that either party may explain the circumstances of the prior sale or offer evidence of changed circumstances affecting the value is a gross over-simplification of the problem. The issue to be determined is the value on the day of the taking. The price paid in most real estate transactions, like the price paid for an object of art, is conclusive only of what the parties agreed to on that specific occasion. It does not establish a market price although the layman tends strongly to think of it as such, and the evidence takes on weight far greater than that to which it is entitled.

Nevertheless, that the admissibility of such evidence lies within the sound discretion of the trial judge is not disputed, but the trial judge in the case at bar went much further than

merely admitting this evidence. He later called the jury's special attention to it by his instruction number 9, to which the defendant properly objected. Having otherwise sufficiently instructed on the jury's right and responsibility to consider all the evidence, it was unnecessary and highly prejudicial to single out the evidence of this specific transaction and instruct that it could be considered.

The admission of the evidence as to the price paid for the condemned real estate was within the sound discretion of the trial court although, for the reasons hereinbefore stated, I would not have admitted it. But calling the court's specific attention to this volatile evidence added further emphasis to evidence already likely to be accorded more weight than that to which it was justly entitled. The combined affect was to give the appellee a headwind to sail against. Thereafter, however, with greater opportunity to reflect upon the matter, the trial court acknowledged such error and an indiscretion in having admitted the evidence. It is commendable that the trial judge acknowledged his errors and took the only step available to rectify them, i.e., the granting of a new trial.

While the court may refer to the evidence in the case and present it to the jury in its charge, the court should not show to the jury a leaning in favor of one of the parties and thus invade the province of the jury. *McCorkle, et al.* v. *Simpson* (1873), 42 Ind. 453. No other evidence was referred to in the charge to the jury. Consequently this instruction could only draw the jury's attention to this particular evidence, which would naturally indicate that the court considered it of paramount importance.

I believe that we all will agree that the trial court might have denied admission of the evidence complained of, or, having admitted it, it might have denied the instruction, and neither would have been reversible error. Admitting that the admissibility of the evidence was discretionary and assuming arguendo that the giving of the instruction was not reversible error but was also discretionary with the court, then the hold-

ing of the majority is that a trial court may not, on motion for new trial or to correct errors, reverse its position taken upon an earlier issue where the ruling lay within the discretion of the court. I am not aware of such an exception to the rule of the *Rans* and *Stinson* cases hereinbefore cited.

It is apparent that the trial court believed that the questionable evidence emphasized by the instruction, while not necessarily compelling a new trial nevertheless presented a situation where there was a reasonable likelihood that the province of the jury had been invaded. It was the duty of the trial court to exercise its sound judgment upon the motion for a new trial. Having done so and no plain abuse of judicial discretion or flagrant injustice being apparent and there being no showing of a very strong case for relief from the court's ruling, we should not invade the province of a trial court, and I would affirm.

NOTE.—Reported in 268 N. E. 2d 73.