HAMILTON COUNTY DEPARTMENT OF PUBLIC WELFARE and Indiana Department of Public Welfare, Appellants–Respondents,

v.

Hoyt SMITH, Appellee–Petitioner.

No. 29A02–9005–CV–299.[1]

Court of Appeals of Indiana, Fifth District.

March 7, 1991.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

Linley E. Pearson, Atty. Gen., Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, for appellants-respondents.

James D. Crum, Coots, Henke & Wheeler, Carmel, for appellee-petitioner.

SHARPNACK, Judge.

The Hamilton County Department of Public Welfare and the Indiana Department of Public Welfare (hereinafter collectively "welfare") appeal from a decision of the Hamilton Superior Court which both reversed the State Welfare Board's decision denying Smith Medicaid benefits and ordered welfare to pay Smith benefits. We reverse the trial court and direct the court to remand to the State Welfare Board for further proceedings.

### ISSUES

Welfare and Smith agree that there are two questions before this court:

1. Did the trial court use the wrong statute in determining that Smith was eligible for Medicaid benefits?

2. Is Smith eligible for Medicaid benefits under the criteria set forth in IND.CODE §§ 12–1–7–14.9(a)(4) and 12–1–7.1–1(b)?

### FACTS

The facts out of which this appeal arises are related to Smith's epileptic condition and his efforts to obtain aid in purchasing the medication he needs to prevent the seizures he experiences because of the condition. Smith suffers from both grand and petit mal epileptic seizures which apparently result from a blow to the head which he suffered some years ago. Smith's grand mal seizures are quite violent, and are characterized by clonic tonic convulsions (severe muscle spasms), episodes of tongue biting, episodes of urinary incontinence, and post seizure confusion and lethargy. The seizures occur with varying frequency; Smith may go for months without having one and then may have as many as five in a period of twenty-eight hours.

Smith has been under various medications to control his seizures. Depakote, the medication he has taken most recently, controls his seizures. Because of a lack of funds, Smith has discontinued taking medication.

In addition to his epilepsy, Smith suffers from depression. Perhaps because of this depression, he is disheveled and has poor habits of personal hygiene. At least one of the physicians who treated Smith recommended that he be institutionalized for treatment of his depression.

Smith filed an application for Medicaid benefits with the Hamilton County Department of Public Welfare. After a preliminary investigation and compilation of additional information, the county department forwarded Smith's application to the State Department of Public Welfare for a determination of Smith's eligibility for benefits. The State Medical Review Team, a body which determines medical eligibility for benefits, found Smith ineligible and denied benefits. Smith appealed to the State Department, and an Administrative Law Judge (ALJ) conducted an evidentiary hearing on his appeal. The ALJ affirmed the denial in a three page order which contained twenty findings of fact. Smith appealed the ALJ's decision to the State Welfare Board, which adopted her findings and conclusions of law and again affirmed the denial of benefits. He next appealed to the Hamilton County Superior Court, which reversed the administrative actions denying Smith benefits. Welfare now appeals the order and judgment of the trial court.

### DECISION

When a trial court, in the first instance, or an appellate court, on appeal, reviews the decision of an administrative

**168**

agency, the court is bound by the findings of fact made by the agency if those findings are supported by substantial evidence. *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 677, 310 N.E.2d 65, 69; *Indiana Education Employment Relations Board v. Board of School Trustees* (1978), 176 Ind.App. 680, 683, 377 N.E.2d 414, 416; I.C. § 4–21.5–5–14(d)(5). The reviewing court may not reweigh the evidence in the process of determining whether the findings are supported by substantial evidence, and the court may not substitute its judgment for that of the agency. *Department of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 177, 252 N.E.2d 248, 250–251.

■ The standard for review of agency conclusions of law is different. The court is not bound by the agency's interpretations of law, and the court is free to determine any legal question which arises out of an administrative action. *Public Employees Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732, 733. When an agency interprets its own statute, the reviewing court should accord its interpretation great weight, but the court is not bound by the agency interpretation and should reverse if the agency incorrectly interpreted the statute. *Department of Environmental Management v. AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209, 1214.

■ We may dispose of the first issue summarily. The parties and this court agree that the trial court looked to the wrong statute in deciding that Smith was eligible for Medicaid. In determining that welfare incorrectly denied Smith the benefits, the trial court relied on the definition of a disabled person contained in I.C. § 12–1–7.1–1(a), which is a statute providing supplemental assistance for disabled persons. The Medicaid statute, I.C. § 12–1–7–14.9(a)(4), provides that, in order for a person to be considered disabled for Medicaid purposes, the person must meet the criteria contained in a different subsection of the supplemental assistance act, I.C. § 12–1–7.1–1(b). In applying the definition

contained in subsection (a), the trial court committed error.

The remaining issue before us is the question of whether Smith qualified for benefits under § 12–1–7.1–1(b), which provides that an eligible person is one who:

Has a physical or mental impairment, disease, or loss which is verifiable by a physician possessing an unlimited license to practice medicine and which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement, and which substantially impairs his ability to perform labor or services or to engage in a useful occupation. Employment in a sheltered workshop or under an approved vocational rehabilitation plan shall not be considered a "useful occupation" for the purposes of this chapter.

Welfare points out that the ALJ's findings were adopted by the welfare board and that the factual determinations of an administrative agency, if supported by substantial evidence, are binding on both the trial court and this court. Welfare contends that the welfare board, in adopting the ALJ's finding that "the presented evidence does not support that [Smith's] seizure disorder will continue without improvement if he is compliant with medication prescribed ..." (Record, p. 143, Finding 20), made a finding of fact which is supported by substantial evidence showing that Depakote "controlled" Smith's seizure disorder. In addition, welfare contends that the welfare board's finding that the medical evidence does not substantiate that Smith's psychiatric disorder would not improve with treatment is a finding of fact supported on the record because Smith offered no evidence that his condition would not improve with treatment.

Smith responds that the board's finding concerning the probability that his seizure condition would improve is arbitrary, capricious, and unsupported by substantial evidence because the evidence shows only that Depakote reduces the frequency and severity of his seizures, but does not show that Depakote, or, for that matter, any other form of treatment, will alleviate or moder-

ate the condition that causes the seizures. Smith also argues that the board's finding was not supported by substantial evidence because he produced evidence showing that he had a disabling psychiatric disorder, and that welfare failed to produce evidence showing that the disorder would improve with treatment.

■ In order to determine whether there was substantial evidence that Smith's seizure disorder will not continue without improvement, we must first determine the proper interpretation of I.C. § 12–1–7.1–1(b). Welfare contends that improvement may be shown by evidence of control or alleviation of the symptoms of the underlying physical or mental condition. Smith contends that improvement may be shown only by evidence of alleviation or moderation of the underlying physical or mental condition itself. We conclude that Smith's interpretation is the better reasoned and adopt it.

As we noted earlier, the statute provides that, in order to qualify for Medicaid benefits, the applicant must suffer from a physical or mental "impairment", "disease", or "loss" which is likely to continue for the lifetime of the claimant "without significant improvement." Unfortunately, the statute neither defines these terms nor explains under what circumstances the welfare board would be justified in finding that the various conditions which they describe are likely to undergo significant improvement. The administrative regulation which is supposed to guide the board in determining whether an applicant qualifies for Medicaid similarly provides little guidance. It provides:

> The determination of whether a condition appears reasonably certain to continue throughout the lifetime of the individual without significant improvement is made on the basis of the expected duration of the condition. A condition which is expected to continue indefinitely fulfills this requirement whereas one which is temporary or transient does not. The expected duration of the condition does not preclude the possibility of future medical advances, changed diagnosis or

prognosis, unforeseen recovery or successful treatment subsequent to the initial prognosis.

470 IND.ADMINISTRATIVE CODE § 9.1–2–3.

This section neither defines the term condition nor attempts to explain what constitutes significant improvement in a condition.

■ Because both the statute and the regulation are ambiguous in this respect, we must construe them in light of binding precedent from this state, persuasive authority from other jurisdictions, and the rules of construction which long have guided our interpretation of legislative enactments. In construing the statute and the regulation, our goal is to seek out and give effect to the intent of the legislature. *B & M Coal Corp. v. United Mine Workers* (1986), Ind., 501 N.E.2d 401, 403 *cert. denied sub nom Spencer County Clerk v. United Mine Workers* (1987), 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839.

We have reviewed the Indiana cases construing I.C. § 12–1–7.1–1(b), and we have found no case which defines "significant improvement" of a "physical or mental impairment, disease, or loss." Because we can find no Indiana precedent, we turn to our rules of construction and persuasive authority from other jurisdictions to guide our construction of the statute.

■ When a court construes a statute, it must give the words of the statute their plain, ordinary, and usual meaning. *Sheriff's Merit Board v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237; *Huber v. Robinson* (1864), 23 Ind. 137, 140. In addition, where the meaning of a particular clause or phrase is in doubt, the court should examine the grammatical structure of the clause in order to ascertain its meaning. *Foremost Life Insurance Co. v. Department of Insurance* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096; *First National Bank v. Farmers and Merchants National Bank* (1908), 171 Ind. 323, 340, 86 N.E. 417, 423.

In light of these rules, we are convinced that I.C. § 12–1–7.1–1(b) requires the

award of benefits unless the underlying condition, and not the symptoms of that condition, has improved or is likely to improve. The clause at issue defines a disabled person as a person who:

> Has a physical or mental impairment, disease, or loss ... which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement....

Thus, the grammatical structure of the statute requires the impairment, disease, or loss to be reasonably certain to continue without significant improvement. According to Webster's Third New International Dictionary (4th ed. 1976), an impairment is "the act of impairing or the state of being impaired: INJURY." Webster's at 1131. A disease is:

> an impairment of the normal state of the living animal or plant body or any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects in the organism (as various genetic anomalies), or to combinations of these factors: SICKNESS, ILLNESS (2) a particular instance or kind of such impairment ... MALADY, AILMENT....

Webster's at 648.

■■■ These definitions make it clear that an impairment or disease is the actual physical defect which gives rise to a given set of symptoms, and not the symptoms themselves. No one argues that the injury to Smith's brain has improved or is likely to improve. Welfare argues that the ALJ found that the symptoms of Smith's epilepsy, his seizures, can be controlled. We accept this finding as true, but we reject the legal conclusion that control of symptoms constitutes an improvement of Smith's impairment or disease.

■■■ Our conclusion that a disease or impairment is not the equivalent of its symptoms finds support in federal case law governing disability benefits.[2] In *Thompson v. Secretary of Health and Human Services* (E.D.N.Y.1983), 559 F.Supp. 548, the court considered whether a claimant who suffered from periodic bleeding episodes was entitled to receive benefits under 42 UNITED STATES CODE § 1382c(a)(3)(A), which provides that a person is disabled if:

> he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

The Department of Health and Human Services adopted the same type of argument that welfare advances here—that, because the symptoms of the claimant's condition did not persist continuously for more than twelve months, his impairment did not persist continuously for more than twelve months. In rejecting this argument, the court wrote:

> The only suggestion of its basis is his immediately prior finding that the episodes of subcutaneous bleeding had never lasted for a continuous period of twelve months. As noted above, the duration requirement generally applies to the listed *impairments.*
>
> But it is unfair to say plaintiff's impairment does not extend beyond his episodes of bleeding. A susceptibility or a tendency toward such episodes is in itself an abnormality. In plaintiff's case such an abnormality has impaired his activities ever since he began to be hospitalized periodically, and his impairment has already lasted more than twelve months. *This is not a case, as the government urges, of "[p]eriodic illnesses separated by period [sic] of health."* Reference to a few sample listed impairments suffices to show that

**2.** Court decisions interpreting federal statutes with similar language and purpose as the state statute under consideration, while not binding on this court, may aid us in construing the state statute. *See Indiana Civil Rights Commission v. Sutherland* (1979), 182 Ind.App. 133, 140, 394 N.E.2d 949, 954.

*when an impairment is characterized by intermittent crises, it is the condition, and not the crises themselves,* that meet the duration requirement.

*Thompson,* 559 F.Supp. at 551 (emphasis added).

Thus, it is clear that the symptoms of an impairment are not to be considered the impairment or disease itself.

Here, welfare did not find that Smith's physical condition itself was subject to improvement; indeed, such a finding would have been unsupported on the record. Instead, welfare found that Smith's symptoms were subject to control, but such a finding does not support a denial of benefits. We therefore conclude that welfare erred in denying Smith benefits on this ground;[3] in this instance, however, welfare's error does not justify the relief granted by the trial court.

When a court determines that an administrative agency has made an error, the court may reverse the agency decision and remand for further consideration. *City of Plymouth v. Stream Pollution Control Board* (1958), 238 Ind. 439, 445, 151 N.E.2d 626, 629; *Department of Public Welfare v. St. Joseph's Hospital* (1979), Ind.App., 398 N.E.2d 1325; I.C. § 4–21.5–5–15(1). The reviewing court is without power to compel any action by the administrative agency; the court only has the power to order the agency to rehear the case. *Aeronautics Commission v. Radio Indianapolis, Inc.* (1977), 172 Ind.App. 687, 694–695, 361 N.E.2d 1221, 1226. Here, the trial court ordered welfare to award Smith benefits. The court's order is plainly erroneous, and must be reversed.

We therefore reverse the judgment of the trial court, and remand to the court with instructions that it remand this action to the welfare board for further proceedings consistent with this opinion.

**3.** We are not presented with the issue of whether Smith's epilepsy "substantially impairs his ability to perform labor or services or to engage in a useful occupation," as further required for eligibility under I.C. § 12–1–7.1–1(b). The ALJ

REVERSED AND REMANDED WITH INSTRUCTIONS.

RUCKER, P.J., and STATON, J., concur.

and the State Welfare Board did not reach the question because of their determination that Smith's seizure disorder was not shown to be one that would continue without improvement.