INDIANA DEPARTMENT OF NATURAL
RESOURCES and Indiana Natural Re-
sources Commission, Appellants–Re-
spondents,

v.

UNITED REFUSE COMPANY,
INC., Appellee–Petitioner,

Indiana Division, Izaak Walton League
of America, Inc., Intervening
Respondent.[1]

No. 49A02–9102–CV–58. [2]

Court of Appeals of Indiana,
First District.

Aug. 31, 1992.

---

1. Indiana Division, Izaak Walton League of America, Inc. is not participating in this appeal.

2. This case was diverted to this office by order of the Chief Judge on July 22, 1992.

Linley E. Pearson, Atty. Gen., Mathew S. Scherschel, Deputy Atty. Gen., Indianapolis, for appellants-respondents.

Sue A. Shadley, Donn H. Wray, Plews & Shadley, Indianapolis, for United Refuse Co., Inc.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Indiana Department of Natural Resources ("DNR"), through the Indiana Natural Resources Commission ("NRC"),[3] appeals from a judgment vacating its order denying United Refuse Company, Inc.'s ("United") request for a floodway construction permit. We reverse and remand.

## ISSUES

We restate the issues on appeal as:

1. Did United fail to carry its burden of proof in showing that its permit application complied with all of the statutory prerequisites for its proposed floodway construction?

2. Are the NRC's findings and conclusions supported by substantial evidence, thereby making the trial court's reversal of its orders erroneous?

3. Did the trial court exceed its authority under the Administrative Adjudication Act ("Act")[4] by issuing factual findings which conflict with those issued by the NRC?

4. Was United denied fundamental due process because it was not given notice regarding why the NRC denied its permit application?

## FACTS

United operates a sanitary landfill on property it owns near a stream called Junk Ditch in Allen County. The property is roughly divided into two portions: 70 acres lying south of power lines which traverse the property ("South Property"); and, 30 acres lying north of the power lines ("North Property").

3. The NRC is the subdivision of the DNR which has ultimate authority within the DNR for purposes of floodway construction permits; we refer throughout to the NRC as that portion of the DNR involved in this dispute.

4. IND.CODE § 4–21.5–1–1, *et seq.*

In the 1970's, United was issued a permit by the NRC for construction on the South Property. In 1985, United submitted an application ("Application") seeking a permit for construction on the North Property. Specifically, the Application sought permission to expand United's landfill operation onto the North Property. The NRC denied the Application on April 26, 1988. United filed a petition for administrative review, and after a hearing, an administrative law judge ("ALJ") issued a report, proposed findings of fact, and a recommended order. Record at 770–80. After objections were lodged and an objections hearing was held, the NRC affirmed the ALJ's decision and adopted the ALJ's order as its final order ("Order") on August 29, 1989. Record at 51.

United sought judicial review of the Order. The trial court issued findings of fact, conclusions of law, and a judgment on November 15, 1990. Record at 492–500. The trial court reversed the Order, finding that the ALJ had applied an improper standard of review in assessing the NRC's initial determinations and failed to serve as the trier of fact in reviewing the propriety of the Application. Additionally, the trial court found that the NRC lacked jurisdiction over the area which the Application covers because the area involved a "storage floodway" instead of a "floodway," as described in the governing statute. Thus, the Application was ultimately granted because of the trial court's reversal of the Order. Record at 498.

The NRC appeals the trial court's decision. Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

*Issue One*

Initially, we address which party was required to carry the burden of proof regarding compliance with the statutory prerequisites for a grant of the Application. We find that United had the burden on the issue of the effects on fish, wildlife, or botanical resources caused by construction on the North Property, failed to sustain its burden, and the NRC therefore properly denied the Application on that basis.

■ The relevant statute clearly states that it is United which bears the burden of proving its Application meets the relevant prerequisites for approval by the NRC. *See* IND.CODE § 13-2-22-13. Specifically, at the time when United applied for its permit, I.C. § 13-2-22-13 stated in pertinent part:

"(d) Any person desiring to:

(1) Erect, make, use, or maintain a structure, obstruction, deposit, or excavation; [or]

(2) Suffer or permit a structure, obstruction, deposit, or excavation to be erected, made, used, or maintained....

in or on any floodway shall first file with the commission a verified written application for a permit.... The application must set forth the material facts together with plans and specifications for the structure, obstruction, deposit, or excavation, and such person must receive a permit from the commission for the work before beginning construction. The commission shall issue a permit only if in the opinion of the commission the *applicant has clearly proven* that such structure, obstruction, deposit, or excavation will not adversely affect the efficiency of, or will not unduly restrict the capacity of, the floodway, or will not constitute an unreasonable hazard to the safety of life or property, and *will not result in unreasonably detrimental effects upon fish, wildlife, or botanical resources.* In deciding whether to issue a permit under this subsection, the commission may consider the cumulative effects of the structure, obstruction, deposit, or excavation...."

I.C. § 13-2-22-13(d) (emphases added). Although no Indiana cases have interpreted this aspect of the statute, its plain wording shows that the clear intent of this portion of the Indiana Flood Control Act is that the applicant, here United, is to bear the burden of showing that all requirements for a permit's issuance are met. *See Vanderburgh County v. West* (1991), Ind.App., 564 N.E.2d 966, 967, *trans. denied* (statutes

must be held to mean what they clearly and plainly express); *cf. Natural Resources Commission v. Porter County Drainage Board* (1990), Ind.App., 555 N.E.2d 1387, 1389, *aff'd*, (1991) Ind., 576 N.E.2d 587 (purpose of Indiana Flood Control Act is to control activities within floodways of Indiana's rivers and streams and maintain policies to control floods and preserve and protect water resources).

■ The ALJ found that United had met several of the statutory criteria necessary, but had failed to prove that no harm would come to fish, wildlife, or botanical resources through its construction on the North Property. *See* Record at 776–77. United misses the mark when it urges that no evidence was presented regarding the effects on fish, wildlife, or botanical resources; as the statute unequivocally states, it was United's burden to show an absence of adverse effects, not the NRC's duty to show the presence of such effects. *See* I.C. § 13–2–22–13(d). United's failure to carry its burden in this regard was fatal to its Application.[5]

*Issue Two*

The NRC claims that the trial court erred in reversing the Order, urging that its findings and conclusions were supported by substantial evidence. United counters that the Order is unsupported by substantial evidence, and thus, the trial court properly reversed it. We find that the Order is supported by substantial evidence.

■ Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principle. *State Board of Tax Commissioners v. Jewell Grain Co.* (1990),

Ind., 556 N.E.2d 920, 921. Additionally, we are governed by the presumption that an agency's decision is correct in view of its expertise, *City of Bloomington v. Delta Treatment Center* (1990), Ind.App., 560 N.E.2d 556, 558, and are bound by the agency's findings of fact if supported by substantial evidence. *Hamilton County Department of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 167–68.

■ The findings show that the ALJ appeared confused regarding his function in the administrative proceedings. As United points out, many of the findings indicate that the ALJ was ostensibly reviewing the NRC's findings, rather than hearing the evidence and making a decision based on that evidence in the first instance. *See* Record at 773–78 (findings stated in terms of whether NRC's initial decisions were "reasonable" and "rational"). An ALJ must make specific findings to crystallize the agency's analysis of the evidence presented to provide a reviewing court with an opportunity for intelligent review of its decision; if the agency's findings are sufficiently specific to allow a person of ordinary intelligence to ascertain the basis of the agency's decision, the findings are sufficient. *Hardesty v. Bolerjack* (1982), Ind. App., 440 N.E.2d 490, 493, *trans. denied.* Despite the ALJ's somewhat disjointed findings, we are able to easily discern the nature and reasoning of his decision. He found that United had failed to meet all the requirements under I.C. § 13–2–22–13(d), specifically, that United failed to carry its burden concerning the requirement involving effects on fish, wildlife, or botanical resources based on the expert's opinion, *see Issue One*, and thus agreed with the NRC's initial determination that the Application should be denied. Because the record shows that the ALJ's decision is supported by substantial evidence, the trial court erred in reversing the Order.[6]

---

5. We note that United failed to provide expert testimony to rebut that of NRC's expert on biology and wildlife, Scott Pruitt. United's argument that it was denied the opportunity to present evidence regarding the Application appears disingenuous, since United had ample opportunity in the course of the hearing before the

ALJ, which lasted several days, to present evidence to sustain its burden.

6. United makes much of the ALJ's letters to the NRC's members after he entered his proposed findings and recommended order. *See* Record at 52–53. We note that the ALJ's letters merely

United also argues that the NRC's characterization of the North Property as a "storage floodway" is dispositive of this issue because unless the property at issue is located in a "floodway," the NRC has no jurisdiction to grant United a construction permit. We note that United correctly asserts that the controlling statute uses only the terms "floodway" and "flood plain," and not "storage floodway." *See* IND.CODE §§ 13-2-22-3(11) and (12). Here, however, the ALJ did not find that the North Property was a "storage floodway," but rather found that according to the 100–year flood criterion, the water level would rise up and over the edge of the flood basin and water would then run down in the opposite direction; this finding is sufficient to show that the North Property is a floodway, and that this floodway is required to "carry and discharge" the flood flow efficiently. *See* I.C. § 13-2-22-3(12); I.C. § 13-2-22-13(d); Record at 774–75.[7] Therefore, the NRC had jurisdiction to require United to obtain a permit for construction on the North Property, and United's contentions to the contrary are simply requests for us to reweigh the evidence, which we may not do. *See Smith*, 567 N.E.2d at 167–68. Any extra findings which the ALJ made which were irrelevant to the resolution of this issue were mere surplusage, which do not affect the validity of his decision. *Cf. Hardesty*, 440 N.E.2d at 493 (findings required to be sufficiently detailed to allow for meaningful judicial review).

In sum, the ALJ's findings, although perhaps inartfully drafted, are based on the evidence garnered at the hearing and are sufficient to support the NRC's ultimate findings. The trial court thus erred in reversing the Order.[8]

*Issue Three*

We briefly address the NRC's assertion that the trial court exceeded its authority under the Act when it issued factual findings which conflict with those entered by the ALJ. We agree that the trial court acted beyond the scope of its review functions in issuing these findings.

The trial court here entered its own findings of fact, which in some cases, conflict with those entered by the ALJ. *Compare, e.g.,* Finding No. 34, Record at 775 (jurisdiction proper because floodway exists in United's land) *with,* Finding No. 33, Record at 496 (United's land not properly characterized as containing floodway). A trial court's functions on review of an administrative agency's decision are limited; it may not reweigh the evidence or substitute its judgment for that of the agency. *See Smith*, 567 N.E.2d at 168. Because the trial court exceeded its scope of review in entering factual findings, and the Order was supported by substantial evidence, *see Issue Two*, the trial court erred in reversing the NRC's decision.

*Issue Four*

Finally, United argues in response to the NRC's contentions that it was denied fundamental due process by the manner in which the NRC conducted the administrative proceedings because United had no notice of the reasons its Application was initially denied. We disagree.

stated that the jurisdictional issue was close, but also reiterated his conclusion that the North Property does indeed meet the requirements of a floodway in I.C. § 13-2-22-3(12). Record at 52–53. The letters therefore explained the ALJ's findings rather than contradicted them as United asserts. *See* Appellee's Brief at 14; *see also Wedmore v. Jordan Motors, Inc.* (1992), Ind. App., 589 N.E.2d 1180, 1185, *trans. denied* (trial court's written correspondence to parties after ruling may be considered to determine meaning and effect of court's decision).

7. Moreover, as the NRC points out, the statute uses the term "any floodway," so even the NRC's

loose usage of the term "storage floodway" does not prevent it from having jurisdiction over the North Property. *See* Reply Brief at 4–5; I.C. § 13-2-22-13(d).

8. United also attacks the appropriateness of the members comprising the NRC, and the "conflict" between IND.CODE §§ 14-3-3-3 and 14-3-3-12 regarding the qualifications of members of the NRC and the DNR staffs. *See* Appellee's Brief at 33–34. We note that arguments concerning statutory revision are best addressed to our legislature.

United's due process rights in the administrative proceedings included the right to be given the reasons for the NRC's initial decision. *See* IND.CODE § 4–21.5–3–5.[9] Here, the record shows that United's corporate representative and counsel were present at the NRC meetings during which its Application was considered, personally informed of the NRC's decisions, and given explicit reasons therefor. Record at 2280–81; 2285–89; 2292–93; and, 2298–2301. United's due process rights were not violated.

We reverse the trial court's judgment and affirm the agency's Order in its entirety,[10] remanding for the entry of judgment in accordance with this opinion.

Reversed and remanded.

BAKER and RUCKER, JJ., concur.

---

**9.** We note that United's citation to persuasive authority from other jurisdictions is unnecessary in view of the binding mandates of Indiana statutes.

**10.** Given United's meritless argument that the NRC has somehow waived its requirement in the Order that United remove the dike along the

power lines and restore the North Property to its natural condition, *see* Appellee's Brief at 6, n. 2, Record at 777–79, we explicitly state that the Order be reinstated in its entirety to dispel any confusion which our reversal of the trial court's judgment may cause United.