**INDIANA DEPARTMENT OF PUBLIC WELFARE, Appellant–Respondent,**

v.

**Loren TECKENBROCK and Edith Teckenbrock, by their guardian, Donna OWEN, Appellees–Petitioners.**

No. 30A01–9303–CV–91.

Court of Appeals of Indiana, First District.

Sept. 20, 1993.

Transfer Denied Nov. 18, 1993.

Pamela Carter, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant-respondent.

Charles M. Loeser, South Bend, for appellees-petitioners.

ROBERTSON, Judge.

The Division of Family and Children, formerly, the Indiana Department of Public Welfare, hereinafter the State, appeals a summary judgment in favor of Loren and Edith Teckenbrock on a petition for judicial review brought by Donna Owen as guardian of her parents, the Teckenbrocks.

We affirm in part, reverse in part, and remand.

The State denied the Teckenbrocks' applications for Medicaid for the months of May, 1989 through October, 1989 because the Teckenbrocks' resources exceeded the State's resource limit for a married couple of $2,250. See Ind.Code 12–15–3–1(1992); 405 IAC 2–3–15 (formerly, 470 IAC 9.1–3–17). The Teckenbrocks, who, as of May 1, 1989, owed nursing home bills of over $16,200, owned life insurance policies with cash surrender values totaling $2,573.70 on the first day of each of the months of May through October. Their other resource consisted of a checking account with a balance of $1.08.

■ The Teckenbrocks maintain that they were eligible for Medicaid in the months of May, 1989 through October, 1989 because, as applicants who met the eligibility requirements for Supplemental Security Income and the Indiana plan for medical assistance which was in effect on January 1, 1972, the State may not deny them benefits by exercising the exemption available to it under Section 209(b) of the Social Security Amendments of 1972, 42 U.S.C. § 1396a(f).[1] The trial court agreed, concluding, in short, that the Teckenbrocks did qualify under the applicable SSI resource limitation of $3,000 and, because Indiana utilized a resource spend-down system in 1972, *Indiana Department of Public Welfare v. Payne* (1992), Ind.App., 592 N.E.2d 714, *trans. pending*, the Teckenbrocks would have been eligible to receive assistance under the State's medical assistance plan in effect in 1972. Under 42 U.S.C. § 1396a(f), the State could not deny the Teckenbrocks Medicaid benefits.

The State challenges the judgment in favor of the Teckenbrocks by attacking the trial court's analysis of the Seventh Circuit's decision in *Roloff v. Sullivan* (7th Cir.1992), 975 F.2d 333, in which it was held that in a state, like Indiana, which has elected the § 209(b) option to restrict Medicaid eligibility to those individuals who would have been eligible for medical assistance under the state's plan as it existed in 1972, an applicant must not only qualify for benefits under the state's medical assistance program in effect in 1972 but the applicant must also qualify for SSI benefits under current federal regulations. The State's whole discussion about the correctness of the Seventh Circuit's construction of 42 U.S.C. § 1396a(f) is superfluous, however, for, as the trial court observed, the State denied the Teckenbrocks benefits solely on the ground that their resources exceeded the limitation set by the State. At no time (prior to the briefing of this appeal) did the agency assert that the Teckenbrocks were ineligible for Medicaid benefits because they did not qualify for SSI benefits.

Inasmuch as the *Roloff* court expressly left "for another day" a decision affecting the class of persons who would be eligible for both SSI benefits under current federal standards and for Medicaid benefits under the rules in force in Indiana at the beginning of 1972, but to whom Indiana had denied Medicaid eligibility, the class into which the Teckenbrocks claim they fall, the *Roloff* court had no cause to consider whether Indiana employed a resource spend-down in 1972 as part of its medical

1. As originally enacted, the federal statute required states participating in the Medicaid program to provide medical assistance to individuals who receive cash payments under one of four welfare programs established elsewhere in the Social Security Act, 42 U.S.C. § 1396 et seq. In 1972, Congress substituted Supplemental Security Income for the Aged, Blind and Disabled (SSI) for three of the four previously existing categorical assistance programs and the federal government took over the funding of medical assistance payments and the setting of standards of need for the Medicaid program. However, at that time, Congress also enacted § 209(b) of the Act, 42 U.S.C. § 1396a(f), which permitted participating states to elect to provide Medicaid only to those individuals who would have been eligible under the state medical assistance plan in effect on January 1, 1972. *Schweiker v. Gray Panthers* (1981), 453 U.S. 34, 39, 101 S.Ct. 2633, 2638, 69 L.Ed.2d 460. Indiana made this election. *Id.* at 40 n. 6, 101 S.Ct. at 2638 n. 6. The Teckenbrocks' eligibility for Medicaid benefits thus turns upon the eligibility requirements of Indiana's medical assistance plan in effect in 1972.

A more complete discussion of the legislative history of the Medicaid program and the precise content of the statutory provisions at issue can be found in *Indiana Dept. of Public Welfare v. Payne* (1992), Ind.App., 592 N.E.2d 714, *trans. pending*.

assistance plan, as this court held in *Payne,* or the manner in which the system operated. And, this court likewise has no reason to reject the *Roloff* court's construction of § 209(b). The facts of this case simply do not put *Roloff* and *Payne* in conflict with one another, and the matter can be resolved simply by applying our decision in *Payne.*

The State asserts that to obtain a summary judgment, the Teckenbrocks are required to affirmatively show that they qualify for SSI. We cannot agree. The Teckenbrocks properly sought judicial review of the administrative determination of eligibility for public assistance in accordance with the review procedures established by the Administrative Adjudication Act. See *Warram v. Stanton* (1981), Ind. App., 415 N.E.2d 114, 116. While they may have had the burden of demonstrating the invalidity of the agency's action in denying them benefits, I.C. 4–21.5–5–14(a), the filing of the petition for judicial review did not subject the matter of their eligibility for benefits to a trial de novo. I.C. 4–21.5–5–11. The issues before the reviewing courts are confined to those addressed by the agency during the administrative review proceedings. *See* I.C. 4–21.5–5–10.

In *Payne,* this court stated that the State's plan in effect on January 1, 1972 contained the following rule which we construed as authorizing a resource spend-down:

> (c) Possession of intangible personal property with an available liquid cash value in excess of the standard resource allowance shall render an applicant ineligible for assistance, and utilization of some of the resources down to the amount of the standard resource allowance is necessary before the applicant can be found eligible.

592 N.E.2d at 722 (citing Ind.Admin.Rules & Regs. (52–1206)–2 (Burns' Code Ed. Supp.1975)). The State argues that the word "utilization" has been misconstrued by the *Payne* court to mean offset and that an applicant must actually utilize excess resources before he or she can be found eligible for benefits. The State is miscon-

struing our holding in *Payne.* We held that the provision quoted above required the State to permit an applicant to spend excess resources to gain immediate eligibility; we said nothing about how the applicant must spend-down, although plainly, one way would be to pay outstanding medical expenses, which under the 1972 plan included nursing home expenses. Rule (52–1203)–1(e)(2).

We reaffirm the holding in *Payne* after having carefully reviewed both the applicable statutes and regulations governing Indiana's medical assistance program in 1972. The regulations state specifically that determinations of need for purposes of public assistance shall be made upon an evaluation of the income and resources "actually available." Rule (52–1104)–9. An applicant who owns, or has an equitable interest in, nonincome-bearing real property is granted assistance upon the condition that the property be sold or rented at its fair market value. Rule (52–1206)–1(c). Nonincome-bearing real property is not considered a resource until the "proceeds of the sale or rental are actually made available." Rule (52–1206)–1(d). Expressly, the regulations place no time restrictions upon the sale of tangible personal property, and the value of such property is not considered a resource until proceeds of the sale are actually made available. Rule (52–1206)–3.

Thus, rather than penalizing the owner of a potentially valuable resource in tangible property when the individual is otherwise in need, Rules (52–1206)–1 and (52–1206)–3 recognize and assist the applicant with his or her existing, actual need but require the recipient to convert real or personal property into a resource available for the recipient's use. Rule (52–1206)–2, which governs intangible personal property such as the cash surrender value of the insurance policies at issue in the present case, displays the same intent to require the applicant to use property which is liquid and actually available. Plainly, the provision requires the county departments to permit an applicant who would otherwise be eligible for assistance to utilize actually

available resources to become eligible for assistance. Inasmuch as the tangible property provisions exhibit an intent to assist with existing need, in the absence of an expression of some other intent, it is reasonable to attribute a similar purpose to Rule (52–1206)–2. Accordingly, we reach the same conclusion as the *Payne* court: the 1972 medical assistance plan requires the division to permit an applicant otherwise in need of medical assistance to become eligible immediately by spending down excess resources.

■ The State argues that in ordering it to grant the Teckenbrocks Medicaid benefits, the court below exceeded the scope of its authority. We must agree. Indiana Code 4–21.5–5–15 authorizes a reviewing court to set aside an agency action and remand the case to the agency for further proceedings, or compel agency action that has been unreasonably delayed or unlawfully withheld, if the court finds that a person has been prejudiced under I.C. 4–21.5–5–14. Indiana Code 4–21.5–5–14 provides that a court shall grant relief under I.C. 4–21.5–5–15 only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence.

■ Cases interpreting the predecessor to this statute, I.C. 4–22–1–18, have consistently applied the rule that upon a petition for judicial review of an administrative determination, the reviewing court only has the authority to remand the matter to the agency for further proceedings. This has been true not only in cases where the agency's fact finding is not supported by substantial evidence but also in cases where the administrative agency has misapplied the law to the facts found by it. Specific agency action should be compelled by the reviewing court only if upon remand agency action was then subsequently withheld or delayed. *See e.g. Neal v. Pike Township* (1988), Ind.App., 530 N.E.2d 103, *trans. denied; Aaron v. Review Board* (1981), Ind.App., 416 N.E.2d 125; *Indiana State Teachers Retirement Board v. Smock* (1975), 165 Ind.App. 429, 332 N.E.2d 800; *Alcoholic Beverage Commission v. Johnson* (1973), 158 Ind.App. 467, 303 N.E.2d 64. This interpretation of the statute was consistent with existing law on the review of administrative action which did not fall within the purview of the Administrative Adjudication Act. *See e.g. State ex rel State Board of Tax Commissioners v. Marion Superior Court* (1979), 271 Ind. 374, 392 N.E.2d 1161, 1166 (Sole relief a court may grant when an administrative decision found to be unlawful is to vacate decision and remand matter to agency for further determination). Although *Hamilton County Dept. of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, relied upon by the State, applies the case law which predated the amendment of the statute without explicitly acknowledging the statute's amendment and recodification, the amendments did not materially alter the permissible scope of relief which may be granted by a reviewing court, *Neal*, 530 N.E.2d at 106, but simply restrict the judiciary from granting any relief except upon a showing of prejudice. Accordingly, we must remand the matter to the court below with instructions to remand the matter to The Division of Family and Children for further proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part and remanded.

BAKER and CONOVER, JJ., concur.