Bruce STANSBERRY, Director of Madison County Office of Family and Children; James M. Hmurovich, Director of the Division of Family and Children; Katherine Humphreys, Secretary of the Indiana Family and Social Services Administration; Steve Carter, Indiana Attorney General, Appellants–Respondents,

v.

Wendy HOWARD, Appellee–Petitioner.

No. 48A02–0104–CV–241.

Court of Appeals of Indiana.

Nov. 14, 2001.

---

**3.** We do not express an opinion on the outcome of Carter's petition to modify under Indiana Code Section 31–14–11–8.

Steve Carter, Attorney General, Stephanie Rothenberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

The Madison County Office of Family and Children ("OFC"), the Division of Family and Children ("Division"), the Indiana Family and Social Services Administration ("FSSA"), and the Indiana Attorney General (collectively referred to as "the State") appeal the trial court's decision to reverse the FSSA's final agency action denying Wendy Howard ("Howard") a license to operate a child care home. On appeal, the State raises the following restated issue: whether the trial court erred in finding that the FSSA acted in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law when it denied Howard's request for a child care home license on the basis of her husband's felony convictions.

We affirm in part, reverse in part, and remand to the trial court for further action consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

Howard began operating a childcare business in her Anderson, Indiana home without first obtaining a license. In re-

sponse to a complaint that she was unlicensed, Howard applied to the OFC for a license to operate as a child care home pursuant to IC 12–17.2–5. Her application requested a license to care for a maximum of thirty children, twenty-four hours per day, seven days per week. As part of the licensing procedure, Howard revealed that in 1994 her husband Henry Howard ("Henry") was convicted of three counts of burglary, as Class C felonies, and three counts of theft, as Class D felonies. *Appellants' Appendix* at 11, 31. All of these convictions arose from a single incident at a business construction site. *Id.* at 11, 33. On September 1, 1997, Henry was released from prison after serving a three-and-one-half year sentence. He completed probation on September 1, 1998.

On the recommendation of the OFC, the Division denied Howard's request for a license to operate a child care home. The Division reasoned that state law provides for the "denial of a child care home license if the applicant's spouse or other household member has a felony (or misdemeanor relating to the health and safety of children) conviction." *Id.* at 35. Having found that Henry—a spouse and occasional helper at the home—was a convicted felon, the Division concluded that denial was appropriate. *Id.* Howard appealed the denial to the FSSA who in turn assigned the appeal to an administrative law judge ("ALJ"). The ALJ heard the appeal in the spring of 2000 and determined that the denial of licensure could not be sustained based on the evidence. *Id.* at 71–75. The OFC appealed to the FSSA who, in a final agency action, denied Howard a child care home license. *Id.* at 87.

Howard sought judicial review and argued before the trial court that the FSSA was arbitrary and capricious, or otherwise acted in violation of the law when it denied her license. The trial court agreed, finding that the OFC was inflexible in concluding that Henry's felony conviction alone supported denial of a license. The State now appeals.

## DISCUSSION AND DECISION

Judicial review of agency action is governed by the Administrative Orders and Procedures Act ("AOPA"). IC 4–21.5–5; *Clendening v. Indiana Family & Soc. Servs. Admin.,* 715 N.E.2d 903, 904, (Ind. Ct.App.1999). Under the AOPA, a court may grant relief from an administrative determination if the determination is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence. IC 4–21.5–5–14; *Rynerson v. City of Franklin,* 669 N.E.2d 964, 971 (Ind.1996); *Weiss v. Indiana Family & Soc. Servs. Admin., Div. of Disability, Aging & Rehabilitative Servs.,* 741 N.E.2d 398, 402 (Ind. Ct.App.2000), *trans. denied.*

▮▮▮▮ When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court. *Amoco Oil Co., Whiting Refinery v. Commissioner of Labor,* 726 N.E.2d 869, 872 (Ind.Ct.App.2000). We review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Noland v. Indiana Family & Soc. Servs. Admin., Div. of Disability, Aging & Rehabilitative Servs.,* 743 N.E.2d 1200, 1203 (Ind.Ct.App. 2001), *clarified and aff'd. on reh'g,* 750 N.E.2d 401 (Ind.Ct.App.2001); *Shoot v. State, Family & Soc. Servs. Admin.,* 691 N.E.2d 1290, 1292 (Ind.Ct.App.1998). Additionally, we are bound by the agency's

findings of fact if supported by substantial evidence. *Hamilton County Dep't of Pub. Welfare v. Smith,* 567 N.E.2d 165, 167–68 (Ind.Ct.App.1991). However, we are not bound by an agency's interpretation of the law. *Ashlin Transp. Servs., Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162, 165 (Ind.Ct.App.1994).

■ The trial court found that the FSSA was arbitrary, capricious, and abused its discretion in denying Howard a license. A rule or decision "will be found to be arbitrary and capricious 'only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.'" *Indiana High School Athletic Ass'n, Inc. v. Martin,* 731 N.E.2d 1, 6 (Ind.Ct.App. 2000), *trans. denied* (quoting *Dep't of Natural Resources v. Indiana Coal Council, Inc.,* 542 N.E.2d 1000, 1007 (Ind.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)). "In order to avoid judicial reversal of its action as arbitrary and capricious, an agency must engage in 'reasoned decisionmaking,' defined to include an explanation of how the agency proceeded from its findings to the action it has taken." KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 11.4 (3rd ed.1994). "An agency's duty of explanation reflects the fact that the agency is exercising delegated adjudicative powers in a quasi-judicial capacity." *Hubbard v. State,* 683 N.E.2d 618, 621 n. 2 (Ind.Ct.App.1997).

■ Our supreme court has determined that the legislature may constitutionally delegate rule-making powers to an administrative agency. *Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n,* 595 N.E.2d 250, 253–54 (Ind.1992). The only limitation on the legislature's delegation of authority to administrative bodies is that sufficient standards must be established to guide the agency in the exercise of this power. *Id.* at 254; *Indiana Alcoholic Beverage Comm'n v. McShane,* 170 Ind. App. 586, 594, 354 N.E.2d 259, 265 (1976).

■ Pursuant to this rationale, the legislature delegated to the FSSA both the responsibility of formulating overall policy for family, health, and social services in Indiana, and the power to adopt rules to implement these policies and procedures. *See* IC 12–8–1–6(b)(2), –7(6), –9. Within the FSSA, the legislature created the Division of Family and Children and delegated to the Division the power and duty to adopt rules regulating child day care under IC 12–17.2.[1] *See* IC 12–13–1–1; IC 12–13–5–1(2)(B), –3(1). The clear objective of the day care regulation under IC 12–17.2 is the protection of children. *Indiana Family & Soc. Servs. Admin. v. Radigan,* 755 N.E.2d 617, 622 (Ind.Ct.App.2001).[2]

■ The State contends that in denying Howard a license based on her husband's felony conviction, the FSSA reasonably interpreted the child care home statutes and that the trial court erred when it substituted its interpretation for that of the agency. Essentially, the State argues that, as the agency entrusted to enforce the child care statutes, the FSSA should be afforded due deference to its expertise and thus to its decisions. Although an agency's interpretation of the

---

1. IC 12–17.2 regulates child care centers (IC 12–17.2–4), child care homes (IC 12–17.2–5), and child care ministries (IC 12–17.2–6).

2. The child care home rules provide, "The purpose of these rules is to *protect and promote the health and safety of children in care* and to support families as consumers of child care services." 470 IAC 3–1.1–0.5 (emphasis added).

statutes and regulations that it is charged with enforcing is entitled to some weight, the interpretation of a statute or rule is a responsibility within the exclusive province of the judiciary. *Miller Brewing Co. v. Bartholemew County Beverage Co.*, 674 N.E.2d 193, 200 (Ind.Ct.App.1996), *trans. denied* (1997). Furthermore, the rationale for granting weight to an agency interpretation of its own laws is the notion that the agency relied on its particular expertise. *Bloomington Hosp. v. Stofko*, 705 N.E.2d 515, 517 (Ind.Ct.App.1999). The FSSA's unique expertise is the health and safety of children. Here, because FSSA did not reveal its reasoning in its order and nothing in the record before us indicates that the FSSA relied on this expertise in denying Howard a license, deference is inappropriate.

 The facts in this case are not in dispute. Howard applied for a child care home license under IC 12–17.2–5–3 [3]

and, the FSSA, citing IC 12–17.2–5–4, denied the license on the basis of Henry's felony convictions. *See* IC 12–17.2–5–4.[4] Our legislature enacted the following law concerning the impact a criminal conviction should have on the granting of a professional license:

> Except as provided under sections 2 through 3 of this chapter,[5] a license or certificate of registration that an individual is required by law to hold to engage in a business, profession, or occupation *may not be denied, revoked, or suspended because the applicant or holder has been convicted of an offense.* The acts from which the applicant's or holder's conviction resulted may, however, be considered as to whether the applicant or holder should be entrusted to serve the public in a specific capacity.

IC 25–1–1.1–1 (emphasis added).[6] This section reveals the legislature's intent to

---

**3.** Under IC 12–17.2–5–3, to obtain a child care home license, an applicant must comply with the following:
 (a) An applicant must apply for a child care home license on forms provided by the division.
 (b) An applicant must submit the required information as part of the application.
 (c) An applicant must submit with the application a statement attesting that the applicant has not been:
 (1) convicted of:
 (A) a felony; or
 (B) a misdemeanor relating to the health and safety of children; and
 (2) charged with:
 (A) a felony; or
 (B) a misdemeanor relating to the health and safety of children;
 during the pendency of the application.
 (d) An applicant must submit the necessary information, forms, or consents for the division to conduct a criminal history check on the applicant and the applicant's spouse.
 (e) An applicant must do the following:
 (1) Conduct a criminal history check of the applicant's employees, volunteers, and all household members who are at least eighteen (18) years of age.

(2) Maintain records of each criminal history check.

**4.** Under IC 12–17.2–5–4, once an applicant has submitted the appropriate documentation, the following "constitute sufficient grounds for a denial of a license:"

 (1) A determination by the division of child abuse or neglect (as defined in IC 31–9–2–14) by the applicant.
 (2) A criminal conviction of any of the following:
 (A) A felony.
 (B) A misdemeanor related to the health and safety of a child.
 (3) A determination by the division that the applicant made false statements in the applicant's application for licensure.
 (4) A determination by the division that the applicant made false statements in the records required by the division.

**5.** Sections 2 and 3 pertain to certain drug convictions.

**6.** This section is codified in the law concerning professions and occupations but has been cited in annotations for statutes outside of

use criminal history not as a per se bar to obtaining professional licenses, but, instead, as a consideration in whether the acts underlying the crime might make the applicant unsuitable for a certain profession. *See Indiana State Bd. of Registration & Educ. for Health Facility Adm'rs v. Cummings*, 180 Ind.App. 164, 168–70, 387 N.E.2d 491, 494–95 (1979) (acts underlying felonies, not the convictions themselves, can be used in determining whether to grant a professional license). By prohibiting an entity from denying a license solely on the basis of an applicant's criminal history, it follows that the legislature also intended to prevent the denial of a license solely on the basis of a crime committed by a spouse or associate of that applicant. Here, Howard has not been convicted of the felonies; therefore, under the reasoning of IC 25–1–1.1–1, she cannot be denied a license without an explanation of how Henry's convictions impact her ability to be entrusted to serve the public as a child care home licensee.

Having said this, we note that IC 12–17.2–5–4 was passed later in time and is more specific than IC 25–1–1.1–1. If Howard herself had a felony conviction, the rules of statutory construction could, arguably, require the provisions of IC 12–17.2–5–4 to govern. *State v. Greenwood*, 665 N.E.2d 579, 583 (Ind.1996) (statutory construction requires a more specific statute to prevail over a more general one); *Glick v. Dep't of Commerce*, 180 Ind.App. 12, 18,

387 N.E.2d 74, 78 (1979) (trial court properly applied statute that was more specific and enacted later in time).[7] However, as those facts are not before us, we must address whether IC 12–17.2–5–4 allows a per se denial of Howard's license based on her husband's felony convictions.

The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier*, 702 N.E.2d 351, 354 (Ind. 1998). In order to discern legislative intent, words and phrases must be given their plain and ordinary meaning and the statute or regulation must be construed as a whole looking to its object and policy. *Noland*, 743 N.E.2d at 1203; *State v. J.D.*, 701 N.E.2d 908, 910 (Ind.Ct.App.1998), *trans. denied* (1999). Courts are required to construe the statutes in such a way as to prevent absurdity and hardship and to favor public convenience. *In re E.I.*, 653 N.E.2d 503, 507 (Ind.Ct.App.1995). In addition, statutes that relate to the same general subject matter are *in pari materia*, and should be construed together in order to produce a harmonious statutory scheme. *J.D.*, 701 N.E.2d at 910; *Glick*, 180 Ind.App. at 18, 387 N.E.2d at 78.

IC 12–17.2–5–3(d) requires an applicant for a child care home license to submit the forms necessary for the Division to conduct a criminal history check on the applicant and the applicant's spouse. IC 12–

---

Title 25. See IC 7.1–3–23–2, –5; –16; IC 8–2–15–1; IC 15–2.1–16–2; IC 22–10–3–10; IC 24–4.5–3–503.

7. In a 1981 advisory opinion, the Indiana Attorney General reconciled the conflicting language of IC 25–1–1.1–1 and IC 7.1–3–21–2, which prohibited the alcoholic beverage commission from issuing a license to a person who had been convicted of a felony. The Attorney General opined that the restriction in the alcoholic beverage law governed because the statute was passed later in time and

was more specific. *See* 1981 Op. Att'y Gen. 81–5 (Feb. 20, 1981). P.L. 100–1983, SEC. 8, repealed IC 7.1–3–21–2 but the reasoning employed by this opinion remains valid. Should statutory construction require the terms in IC 12–17.2–5–4 to govern, a good argument could be made that this statute's plain meaning allows a license to be denied, without explanation, on the basis of the applicant's *own* felony convictions regardless of the nature of the felony.

17.2–5–4(2) provides that a felony conviction is a sufficient basis for denying a child care home license. The statute is silent concerning who must have committed the felony to provide sufficient basis for a denial. The State interprets these sections together and contends that a felony conviction of the spouse is a sufficient basis for denying a license. We disagree and find that the focus of the criminal inquiry under IC 12–17.2–5–4 is the applicant.

Most child care statutes provide that a felony is a sufficient basis for denying a license. *See* IC 12–17.2–4–5(2) (child care centers); IC 12–17.4–4–4(2) (foster homes); IC 12–17.4–5–4(2) (group homes). Like the felony language in IC 12–17.2–5–4, these statutes are silent concerning to whose felony conviction they refer. These statutes also require an applicant to conduct and maintain criminal history checks on employees and volunteers. *See* IC 12–17.2–4–3(e); IC 12–17.4–4–3(e); IC 12–17.4–5–3(e). It could therefore be argued that, because the FSSA has access to the criminal histories of all of the employees and volunteers, a felony committed by any one of these individuals would result in a per se denial of the license. However, a per se denial of a license because a volunteer or employee has a felony conviction would create the absurd result that the applicant would be denied the license on the basis of an impediment that could be remedied—the problematic employee or volunteer could be asked to leave the child care home.

■ It is the criminal history of the applicant that is of primary concern under the child care statutes.[8] Under most child care statutes, in addition to submitting to a criminal history check, the applicant is required to submit a statement that he or she has not been convicted of or charged with a felony or a misdemeanor relating to the health and safety of children during the pendency of the application. *See* IC 12–17.2–4–3(c); IC 12–17.2–5–3(c); IC 12–17.4–4–3(c); IC 12–17.4–5–3(c); 470 IAC 3–1.1–28(a)(4). Although the child care home statute and rules also require a criminal history check of the applicant's spouse, *see* IC 12–17.2–5–3(d) and 470 IAC 3–1.1–28(b)(1), there is no comparable requirement that the spouse submit a statement attesting to the spouse's lack of criminal activity. The focus thus remains primarily on the activities of the applicant.

Interpreting other child care statutes within the same statutory scheme further supports the conclusion that the applicant is the main focus of the licensing inquiry. Pursuant to IC 12–13–5–1(2)(B), the Division was granted the power to administer the licensing and inspection of child care homes under IC 12–17.2 and foster homes under IC 12–17.4. IC 12–17.2 and IC 12–17.4 were enacted during the 1992 session of the Indiana General Assembly and contain many identical provisions.[9] Both foster home and child care home licensees care for children in private residences and not institutions. Children in both types of care are equally at risk from the actions of employees, volunteers, and those who live in the home. The potential risk these

---

8. We do not hold that the criminal record of an employee, volunteer, or spouse has no impact on the granting of a license. The FSSA could deny a license by providing a reasoned explanation of why a person associated with the child care would pose a threat to the health and safety of the children.

9. IC 12–17.2 and IC 12–17.4 were enacted during the same legislative session in P.L. 20–1992, SEC 41 and P.L. 81–1992, SEC 31, but were passed mistakenly using the same new article, IC 12–17.5. In P.L. 1–1993, both laws were correctly reenacted under their own articles and IC 12–17.5 was repealed. See P.L. 1–1994, SEC 66 (with retroactive effect).

individuals pose to the children is recognized by the requirement in both laws that an *applicant* must conduct a criminal history check of the employees, volunteers, and all household members who are at least eighteen years of age. *See* IC 12–17.2–5–3(e); IC 12–17.4–4–3(e).

It is reasonable to assume that the legislature is equally concerned about the well-being of children in foster homes and children in child care homes and that precautions taken by the FSSA for one would be taken for the other. IC 12–17.4–4–4 and IC 12–17.2–5–4 contain identical language and set forth that a felony constitutes "sufficient" grounds to deny a license for a foster home and child care home, respectively. When enacted, IC 12–17.4–4–11 and IC 12–17.2–5–9 each provided that the "division shall deny a license when an applicant fails to meet the requirements for a license." IC 12–17.4–4–11 was amended in 1997 without a concurrent amendment to IC 12–17.4–4–4. P.L. 121–1997, SEC. 1. The new language provided that the Division *"shall deny* a [foster home] license to an *applicant* who has been convicted of" certain enumerated felonies, including murder, battery, arson, incest, carjacking, child selling, and felonies involving weapons or controlled substances. IC 12–17.4–4–11 (emphasis added), as amended by P.L. 121–1997, SEC. 1. The legislature further provided that the Division *"may* deny a license to an *applicant* who has been convicted of a felony that is not listed in this subsection." *Id.* (emphasis added). These statutes read together preclude a felony that is not enumerated from serving as a per se bar to a foster home license

under IC 12–17.4–4–4, even if committed by the applicant. Under IC 12–17.4–4–11 the FSSA retains some discretion.

If the State's interpretation of the law is correct, the original language of IC 12–17.4–4–4 required a per se denial of a license based on any felony committed by an applicant, the applicant's spouse, or one involved with the foster home. No explanation was necessary. The language in amended IC 12–17.4–4–11, read together with IC 12–17.4–4–4, reveals that the denial of a license under IC 12–17.4–4–4 is restricted to the crimes of the applicant and not the spouse. Furthermore, even if a spouse could trigger the denial of a license, IC 12–17.4–4–11 provides guidance as to the kind of crimes that are of particular concern for the legislature in a child care situation—those that appear to risk the health and safety of children.[10]

In light of the similar statutory scheme and consistent underlying interests, the amended foster home language reveals three things about child care laws under IC 12–17.2 and IC 12–17.4. First, that the primary focus in a licensing inquiry is the applicant and not one associated with or married to the applicant. Second, that the legislature considers certain felonies to be sufficiently violent or dangerous to the health and safety of children to prompt a per se bar to obtaining a license. Finally, for felonies that are not enumerated, that the FSSA and its divisions maintain discretion to deny or grant a license for those felonies. To avoid being arbitrary and capricious under this discretionary power, when denying a license on the

---

**10.** This reasoning is consistent with the predecessor to IC 12–17.2–5–3(e), which required an applicant for a child care home to have volunteers and household members who were at least eighteen years old complete a criminal history affidavit swearing that the person had not been arrested for or convicted of rape, criminal deviate conduct, child molesting and other crimes, specifically named, that pertained to children. *See* P.L. 20–1992, SEC 41. IC 12–3–2–18, before its repeal in 1992, required the same statement from employees of a child care home.

basis of a felony conviction, the agency must provide evidence of having engaged in reasoned decisionmaking as to why the felony poses a threat to children.

Our court has noted that the "law has few objectives more compelling than protecting the interests of children." *Clark v. Atkins,* 489 N.E.2d 90, 100 (Ind.Ct.App. 1986), *trans. denied.* Considering the violent nature of most felonies and the fact that a spouse has access to the premises of a child care home, it is tempting to agree that sound policy requires the FSSA to exclude from child care any person whose spouse or associate has been convicted of a felony. Upon further reflection, the reasoning breaks down. The FSSA has been entrusted with the charge of protecting the health and safety of children. This goal is not promoted by excluding from child care an applicant whose spouse has committed a felony that does not impact the health and safety of children. *See Matter of Transki,* 620 N.E.2d 16 (Ind.1993) (it is a felony under 26 U.S.C. § 7206(1) to file a false federal income tax return); IC 6–2.5–9–3 (it is a felony to knowingly fail to collect or remit Indiana gross retail or use taxes to the Department of Revenue); IC 27–2–16–3 (it is a felony to knowingly and with intent to defraud an insurer file false, incomplete or misleading information); IC 31–11–11–1 (it is a felony to knowingly furnish false information when applying for a marriage license); IC 35–43–5–7 (welfare fraud in an amount greater than $250 is a felony). Further, a blanket denial of a license without consideration of the passage of time since the crime does nothing to "protect and promote the health and safety of children" in child care. 470 IAC 3–1.1–0.5.

The State argues that a license can be denied for two reasons: the malfeasance of the applicant herself and the criminal background of those who will be in contact with the children. We agree, but find that the FSSA acts capriciously and arbitrarily unless it provides the reasoned decisionmaking revealing why the criminal background of the spouse or associate poses a danger to the children who will be in the child care home.

■ Noting the legislature's charge to the FSSA to ensure the health and safety of children, interpreting the child care statutes as a whole, and finding no evidence that the FSSA engaged in reasoned decisionmaking in its final action, we conclude that the FSSA acted arbitrarily and capriciously when, without explanation, it denied Howard a license solely on the basis of Henry's felony convictions.

■ When an administrative decision is found to be arbitrary, capricious, or not in accordance with law under IC 4–21.5–5–14, the sole relief either the trial or appellate court may grant is to vacate the decision and remand it for further determination by the agency. IC 4–21.5–5–15;[11] *Shoot,* 691 N.E.2d at 1293; *Indiana*

---

**11.** Pursuant to IC 4–21.5–5–15: "If the court finds that a person has been prejudiced under section 14 of this chapter, the court may set aside an agency action and: (1) remand the case to the agency for further proceedings; or (2) compel agency action that has been unreasonably delayed or unlawfully withheld." IC 4–21.5–5–15. Although subsection (2) appears to provide a court with the power to order agency action, our court has commented on the precursor to I.C. 4–21.5–5–15, which con-tained substantially the same language as does the current section, as follows:

"The express intent of this part of the statute is to limit the reviewing court's authority to remand the case to the administrative agency for further proceedings after a proper determination that the agency's decision was contrary to law. If upon remand the agency unlawfully withholds or unreasonably delays the redetermination of the case, then the trial court may compel agency

*Dep't of Human Servs. v. Firth,* 590 N.E.2d 154, 159 (Ind.Ct.App.1992), *trans. denied; Hamilton County Dep't of Pub. Welfare v. Smith,* 567 N.E.2d 165, 171 (Ind.Ct.App.1991). The trial court was correct in setting aside the decision of the FSSA. However, it should have remanded the cause to that agency to make a proper investigation. Relevant factors may include whether the actions underlying Henry's crimes pose a threat to the children for whom Howard is caring, the time that has elapsed since the crimes occurred, Henry's suggested role in the child care home, and any other factors that could affect the health and safety of children in Howard's care. *See State Dep't of Pub. Welfare v. St. Joseph's Hosp. of South Bend, Inc.,* 398 N.E.2d 1325, 1329–30 (Ind. Ct.App.1979) (trial court correctly set aside decision of the Department of Public Health but should have remanded the decision to the Department for further investigation).

We therefore affirm the decision of the trial court that the FSSA acted in an arbitrary and capricious manner, reverse the judgment of the trial court ordering that Howard be issued a child care home license, and remand the cause to the trial court for action consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further action consistent with this opinion.

BAILEY, J., and BROOK, J., concur.

---

action by direct order. Otherwise the reviewing court does not have power to compel agency action as part of the initial review function. It may only remand the cause for rehearing." *Indiana Alcoholic*

*Beverage Comm'n v. Edwards,* 659 N.E.2d 631, 636 (Ind.Ct.App.1995) (quoting *Indiana Alcoholic Beverage Comm'n v. Johnson,* 158 Ind.App. 467, 476–77, 303 N.E.2d 64, 69 (1973)).