CITY OF CARMEL, Appellant–
Defendant,

v.

LEEPER ELECTRIC SERVICES,
INC., Appellee–Plaintiff.

No. 30A01–0304–CV–158.

Court of Appeals of Indiana.

March 18, 2004.

Transfer Denied May 27, 2004.

Angela M. Smith, David B. Honig, Hall Render Killian, Heath & Lyman, P.S.C., Indianapolis, IN, Attorneys for Appellant.

David McNamar, McNamar & Associates, Indianapolis, IN, Michael Tosick, Greenfield, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

The City of Carmel appeals the trial court's decision to grant Leeper Electric Services, Inc.'s (Leeper Electric) Motion to Correct Errors and Motion to Correct Judgment Entry. The City of Carmel raises one issue on appeal, which we restate as follows: whether the trial court abused its discretion when it granted Leeper Electric's Motion to Correct Errors pursuant to Indiana Trial Rule 59(J)(5) and awarded $1,120,000 in damages after finding that the jury's award of $675,000 in damages was not within the bounds of the evidence.[1]

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

On November 3, 2000, Leeper Electric filed its Amended Complaint against the City of Carmel and other defendants not parties to this appeal. In pertinent part, Leeper Electric alleged that an approximately four-acre parcel of real estate located on the northeast corner of 131st Street and U.S. 31 in Carmel, Hamilton County, Indiana was rendered valueless as a result of the City of Carmel's implementation of a comprehensive development plan and denial of Leeper Electric's application for rezoning of the property. Leeper Electric further alleged that the City of Carmel's actions effectively deprived it of any legitimate use of the subject real estate and, thus, constituted a "taking" by the City of Carmel without just compensation in viola-

tion of the United States and Indiana constitutions.

On May 16, 2001, the trial court determined that the matter effected a "taking" of Leeper Electric's real estate and ordered the matter to proceed as an inverse condemnation and eminent domain action. Thereafter, the trial court appointed three appraisers to evaluate Leeper Electric's real estate in order to determine the fair market value of the property as of November 3, 2000, the date of the taking.

In November of 2002, a jury trial was held. Evidence was introduced that Leeper Electric purchased the real estate in 1996 for $100,000. The property previously had been owned by Earlham College, which had tried to sell the parcel for several years without success. Leeper Electric offered into evidence the testimony of four appraisers and the testimony of Mr. Robert Leeper, the company's owner, concerning their opinions as to the fair market value of the property. The appraisers testified to opinions of value ranging from $1,120,000 to $1,400,000. Leeper testified that in his opinion the property was worth $1,700,000. On November 22, 2002, the jury awarded damages to Leeper Electric in the amount of $675,000.

On December 13, 2002, Leeper Electric filed a Motion to Correct Errors. The trial court granted Leeper Electric's motion in part, finding that the jury award of $675,000 was inadequate and not within the bounds of the evidence. Thereafter, the trial court entered judgment for Leeper Electric in the amount of $1,120,000. On April 21, 2003, in response to Leeper

---

1. We heard oral argument in this case on February 11, 2004, in Indianapolis, Indiana.

2. On cross-appeal, Leeper Electric argues that in the event this court finds that the trial court abused its discretion in granting the motion to correct errors and awarding $1,120,000 in damages pursuant to T.R.

59(J)(5), that the only proper relief that should be granted is a remand for a new trial on all of the issues. Because we affirm the trial court's final judgment on the evidence for the amount of the proper damages, we do not need to address this issue.

Electric's Motion to Correct Judgment Entry, the trial court amended its judgment in order to allow Leeper Electric to recover prejudgment interest and litigation expenses in addition to the $1,120,000 damages award. The City of Carmel now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court granted Leeper Electric's Motion to Correct Errors and entered final judgment on the evidence for the "amount of proper damages" pursuant to Ind. Trial Rule 59(J)(5). When considering a motion to correct errors and a request for entry of final judgment on the evidence, a trial court is governed by T.R. 59(J)(5), which provides:

> The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors .... (5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of proper damages, grant a new trial, or grant a new trial subject to additur or remittitur.

T.R. 59(J)(5). This remedy is available only where the evidence is insufficient to support the verdict as a matter of law. *Precision Screen Mach. v. Hixson*, 711 N.E.2d 68, 70 (Ind.Ct.App.1999). Moreover, the trial judge sits as a "thirteenth juror" and must determine whether in the minds of reasonable persons a contrary verdict should have been reached. *Neher v. Hobbs*, 752 N.E.2d 48, 52 (Ind.Ct.App. 2001) (citing *Hixson*, 711 N.E.2d at 70). The trial judge, as a "thirteenth juror," hears the case along with the jury, observes the witnesses for their credibility, intelligence, and wisdom, and determines whether the verdict is against the weight of the evidence. *Id.*

Once the trial court has entered final judgment on the evidence for the amount of proper damages, we will reverse this decision only for an abuse of discretion. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *trans. denied.* An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Neher*, 752 N.E.2d at 52. An abuse of discretion also results where a trial court's decision is without reason or is based upon impermissible reasons or considerations. *Cobb*, 729 N.E.2d at 167.

In determining whether the trial court properly entered final judgment on the evidence, this court employs the same standard of review as the trial court. *Russell v. Neumann–Steadman*, 759 N.E.2d 234, 237 (Ind.Ct.App.2001); *Carbone v. Schwarte*, 629 N.E.2d 1259, 1261 (Ind.Ct. App.1994). We must only consider the evidence and reasonable inferences favorable to the non-moving party. *Russell*, 759 N.E.2d at 237. We may not weigh conflicting evidence or judge the credibility of witnesses because of the constitutional right under Article 1, Section 20 of the Indiana Constitution to have a jury perform the fact-finding functions. *Id.;* IND. CONST. art. 1, § 20.

Therefore, it is our duty to affirm the trial court's final judgment on the evidence for the amount of proper damages unless it is clearly demonstrated by the City of Carmel that the trial court abused its discretion.

### II. Motion to Correct Errors

The City of Carmel argues that the trial court abused its discretion when it granted Leeper Electric's Motion to Correct Er-

rors pursuant to T.R. 59(J) and awarded $1,120,000 in damages to Leeper Electric. Specifically, the City of Carmel contends that the evidence was sufficient to support the jury's verdict of $675,000. Leeper Electric, however, argues that the trial court correctly entered judgment for the amount of proper damages because the jury's award determination was not within the bounds of the evidence.

A jury is to be afforded great latitude in making damage award determinations. *Hixson*, 711 N.E.2d at 70. A verdict will be upheld if the award falls within the bounds of the evidence. *Ritter v. Stanton*, 745 N.E.2d 828, 845 (Ind.Ct. App.2001), *Carbone*, 629 N.E.2d at 1261. The trial court may only reverse a jury verdict "when it is apparent from a review of the evidence that the amount of damages awarded by the jury is so small or so great as to clearly indicate that the jury was motivated by prejudice, passion, partiality, corruption, or that it considered an improper element." *Dee v. Becker*, 636 N.E.2d 176, 177 (Ind.Ct.App.1994).

Moreover, it is generally held that upon review an appellate court will not disturb an award of damages in an eminent domain proceeding where the award is within the bounds of the probative evidence adduced at trial. *State v. Raymond E. Heinold Family Trust*, 484 N.E.2d 595, 597 (Ind.Ct.App.1985), *City of Elkhart v. No–Bi Corp.*, 428 N.E.2d 43 (Ind.Ct.App. 1981). In *City of Elkhart*, the court stated that:

> On review of such an award, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. The evidence will be looked at in a light most favorable to the judgment.

*Id.* at 45.

The foregoing rules tend to give great deference to damage awards in eminent domain cases because of the fact-finder's ability to hear the evidence and judge the credibility of witnesses first hand. However, the Indiana Supreme Court imposed limitation upon juries in these cases in *Gradison v. State*, 260 Ind. 688, 695–96, 300 N.E.2d 67, 74–75 (1973), when it determined that in eminent domain cases, the jury may not base its verdict upon its independent knowledge of values. If the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, but their assessment must be supported by testimony, or it cannot stand. *See City of Elkhart*, 428 N.E.2d at 45.

In arguing that the jury's award of damages in the amount of $675,000 was within the bounds of the evidence presented at trial, the City of Carmel claims that the appraisers' valuations of the Leeper Electric property were higher than the actual fair market value because the property was undeveloped, unimproved, had no access to southbound U.S. 31, and was surrounded by other unimproved property, a church, and a retirement center. However, Leeper Electric maintains that there is no evidence that the fair market value of the Leeper Electric property, given its highest and best use on the date of the taking, was $675,000. Rather, Leeper Electric claims that the evidence shows that the fair market value of this property was no less than $1,120,000, and the jury's verdict was clearly outside the bounds of the evidence.

Here, the record before us indicates that fair market value of the Leeper Electric property as of the date of the taking, i.e., November 3, 2000, was no less than $1,120,000. The appraisers used a comparable sales approach wherein the selling price of other "comparable" property was used to determine the fair market value of

the Leeper Electric property. Fred Ellis, an appraiser, testified that, in his opinion, the fair market value of the Leeper Electric property based on four comparable sales was $1,400,000. Appraiser Mervyn Posner, using the same four comparable sales, testified that the Leeper Electric property was valued at $1,300,000. Another appraiser, William Sanders, used three different comparable sales as the basis of his opinion and testified that the Leeper Electric property was worth $1,375,000 as of the date of the taking. A fourth appraiser, Michael Lady,[3] used six comparable land sales to form his opinion that, as of the date of the taking, the Leeper Electric property was valued at $1,120,000. Mr. Leeper also testified, and he opined that the property was worth $1,700,000.

According to the City of Carmel, all four appraisers based their valuations of the Leeper Electric property upon an extrapolation of information concerning the sale of other properties which were far superior to the Leeper Electric property by virtue of their location, access characteristics, zoning, physical characteristics and/or improvements. Many of the sales used by the appraisers as comparable parcels were located in established retail or commercial developments. The parcels that the appraisers compared with the subject property also possessed bi-directional access to U.S. 31. Several of the parcels of land were located in existing commercial developments that offered full utilities, off-site retention, and other benefits. Further, the City of Carmel notes that five of the comparable sales were located outside the City of Carmel in areas with thriving retail and business establishments. Three other properties were located in proximity and with good access to U.S. Interstate 465 (I-465). Therefore, the City of Carmel maintains that the evaluations were based on the sales of other properties that were superior to the Leeper Electric property and that the jury properly weighed the evidence and awarded damages in the amount of $675,000.

The City of Carmel contends that the jury was entitled to consider the underlying assumptions upon which the appraisers based their opinions, and if such assumptions were not true, to "decide what [a]ffect, if any, that had on the appraisers' opinions." *Appellant's Brief* at 15. In particular, the City of Carmel argues that "it was entirely within the purview of the jury to review the comparable sales used by the appraisers called to the stand by Leeper and to consider what effect the superiority of these comparable sales, due to their location within an existing retail center or office park, proximity to I-465 or to I-69, bilateral access to and from U.S. 31, improvements, availability of full utilities, differences in size, and other superior traits would have upon their value in comparison to the Leeper Electric property." *Appellant's Brief* at 15. The jury, according to the City of Carmel, was also entitled to conclude that the value of the Leeper Electric property was less than the sales price of the superior properties considered comparable by the appraisers.

▬ The only evidence of a value less than $1,120,000 for the property was Leeper Electric's 1996 purchase price of $100,000. The price voluntarily paid by a purchaser is admissible as evidence of the property's fair market value. *See Mar-*

---

3. Appraisers Ellis, Posner, and Sanders were appointed by the trial court to determine the fair market value of the Leeper Electric property as of November 3, 2000, the date of the taking. Appraiser Lady, however, was originally hired by the City of Carmel to be an expert witness. Leeper Electric entered Lady's deposition testimony as evidence at trial.

shall v. Bird, 577 N.E.2d 254, 256 (Ind.Ct. App.1991); State v. Valley Dev. Co., Inc., 256 Ind. 278, 281, 268 N.E.2d 73, 76 (1971). However, we cannot say that the price paid for the land here, standing alone, is sufficient to establish the fair market value of the property four years after the sale and after the property was rezoned to a higher use, from residential to commercial. The only evidence using the highest and best use of the property as of the date of the taking were the appraisers' valuations of the property as a commercial/business property.

In Heinold, this court found that it was proper for the appraiser to determine the value of the trust property before the taking by applying the highest and best use of property criteria.  484 N.E.2d at 598. Moreover, in Lucre Corp. v. County of Gibson, 657 N.E.2d 150, 156 (Ind.Ct.App. 1995), we stated that "an award of damages in an eminent domain proceeding will not be disturbed where the award is within the bounds of the probative evidence adduced at trial."  In Lucre, the record revealed that the experts valued the property from $130,000 to $6,300,000; the jury determined Lucre's damages to be $130,500.  Id.  Because the award was within the bounds of the probative evidence, this court found no error.  Id.

The City of Carmel argues that the jury's verdict was within the bounds of the evidence and, therefore, the trial court abused its discretion by applying T.R. 59(J)(5).   Because the property value could be properly adjusted for the passage of time by increasing its value by five percent (5%) per annum, to determine its value in 2000 by taking the purchase price of $100,000 in 1996, and then adding to that figure a 5% inflation factor per year to determine the fair market value of the property as of the date of the taking. Leeper Electric responds that there are three recognized methods for determining a property's fair market value, and the City of Carmel's suggested method is not one of them.

■■■ In State v. Bishop, 800 N.E.2d 918 (Ind.2003), our supreme court recently addressed how to assess the fair market value of property that is taken by condemnation.   There, our supreme court stated that it is well established in Indiana that the basic measure of damages in eminent domain cases is the fair market value of the property at the time of the taking. Bishop, 800 N.E.2d at 923; State v. Church of the Nazarene of Logansport, 268 Ind. 523, 526, 377 N.E.2d 607, 608 (1978).[4]  Fair market value is the price at which property would change hands between a willing buyer and seller, neither being under any compulsion to consummate the sale.  Ohio Cas. Ins. Co. v. Ramsey, 439 N.E.2d 1162, 1167 (Ind.Ct.App. 1982).   "Anything affecting the sale value [on the date of the taking] ... is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value.'"  Southern Ind. Gas & Elec. Co. v. Gerhardt, 241 Ind. 389, 393, 172 N.E.2d 204, 205–06 (1961).

4.  IC 32–24–4–9(g), which governs the amount of compensation to be awarded in eminent domain cases, states:

> For the purpose of assessing compensation and damages, the right to compensation and damages is considered to have accrued as of the date of the service of the notice provided in section 6 of this chapter,

and actual value of compensation and damages at that date shall be:

> (1) the measure of compensation for all property to be actually acquired; and
> (2) the basis of damages to property not actually acquired but injuriously affected; except as to the damages stated in subsection (c)(4).

■ *Bishop* set out the three widely accepted approaches to estimating the fair market value of property taken by eminent domain. The three methods of evaluation are: (1) the current cost of reproducing the property less depreciation from all sources; (2) the market data approach or value indicated by recent sales of comparable properties in the market; and (3) the income-approach or the value which the property's net earning power will support based upon the capitalization of net income. *Bishop*, 800 N.E.2d at 923–24; *State v. Jones*, 173 Ind.App. 243, 251, 363 N.E.2d 1018, 1024 (1977). In the appraisal of real estate, any one or all three of these approaches to estimate the fair market value may be applied. *Annon II, Inc. v. Rill*, 597 N.E.2d 320, 327 (Ind.Ct.App. 1992).

In the present case, the appraisers correctly used the market data approach to determine the fair market value of the subject property. The remaining approaches for determining the fair market value of the subject property were not applicable because the subject property was not developed. There were no buildings or improvements located on the real estate. The subject property was not earning money from either a business operating on the property or from the property's natural resources and there was nothing to reproduce except for the actual property.

Leeper Electric maintains, and we agree, that a valuation by merely taking the purchase price of the property and multiplying it by a figure for annual appreciation is not, as the City of Carmel suggests, a recognized method to determine the fair market value of real estate in an eminent domain proceeding. Appraiser Fred Ellis testified that he could not find any sales to give him a true appreciation figure.

■ Moreover, even if such a method were recognized, it would not be applicable when the zoning classification of the property changes from the time it is acquired to the time it is condemned. Here, the zoning of the Leeper Electric property when the property was acquired was S–2 residential property. However, the appraisers testified that the highest and best use of the property was for commercial or business use. A landowner is entitled to the value of the property at its highest and best use, not necessarily the use to which it is presently being put. *Heinold*, 484 N.E.2d at 598. There is no evidence that the highest and best use of the property was for residential use on the date of the taking. In fact, the evidence shows that the City of Carmel rezoned the U.S. 31 corridor to B–5, which accommodated the use of the property as a hotel. *See Appellant's Appendix* at 61. The zoning for a hotel was present and there was no need to rezone to permit this commercial use. Leeper Electric needed a height variance to accommodate the hotel's number of stories. This variance was approved by the City of Carmel's appropriate agencies, but the City of Carmel blocked Leeper Electric from developing the property by imposing a moratorium and passing an ordinance prohibiting any development of the property.

Based on the evidence presented, the value of the subject property, on the date of the taking was no less than $1,120,000. The appraisers used the market data approach or value indicated by recent sales of comparable properties. This is one of the widely accepted methods for determining the fair market value of property. *See Bishop*, 800 N.E.2d at 923. The method of determining the value of the subject property suggested by the City of Carmel is not a recognized method of valuation. The jury's award of $675,000 was not within the

bounds of the evidence. As a result, we conclude that the trial court did not abuse its discretion by granting Leeper Electric's Motion to Correct Errors and by awarding damages in the amount of $1,120,000 pursuant to T.R. 59(J)(5).

Affirmed.

BAILEY, J., and VAIDIK, J., concur.