## ST. MARGARET MERCY HEALTH-CARE CENTERS, INC., Appellant,

v.

## Barbara POLAND, Appellee.

No. 45A03–0402–CV–92.

Court of Appeals of Indiana.

May 31, 2005.

Robert A. Anderson, Julie A. Rosenwinkel, Krieg DeVault Galvin, Hammond, IN, Attorneys for Appellant.

Michael D. Babcock, Sachs & Hess, P.C., Hammond, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

St. Margaret Mercy Healthcare Centers, Inc. (St. Margaret) appeals a jury verdict in which it was found partially at fault for a personal injury suffered by Barbara Poland (Poland) while she was roller skating at the Blade N Skate's rink [1], a facility

---

1. Although the legal name of the facility is Blade N Skate, we will refer to the facility as

owned and operated by St. Margaret.[2]

We affirm.

## ISSUES

1. Whether the trial court committed reversible error in giving Indiana's Pattern Jury Instruction No. 5.41 on incurred risk in a negligence action involving a fall at a roller skating rink.

2. Whether the jury verdict was flawed because there was no percentage of fault attributed to Poland.

## FACTS

On February 14, 1998, Poland and her husband Mark went with their teenage son to St. Margaret. After arriving at the rink, she learned it was teen night. Many skaters appeared to be skating "out of control and nobody seemed to be supervising them." (Tr. 115). She and Mark also observed that one of the rink guards was playing "crack the whip" with skaters. *Id.* Mark described "crack the whip" to the jury as a game whereby skaters lined up behind one of the rink guards forming a human chain with each other, and while holding onto his shirt tail, he would "swoop around [the corner] and the kids go [sic] flying off his shirt tail." (Tr. 174). She noticed throughout the night that other rules of the rink were also being violated. An example of one such violation was "four or five girls skating in a line, and according to ... [St. Margaret] rules that they announced at the beginning, they weren't supposed to do that." (Tr. 116). She and Mark stayed at the rink because they did not want to disappoint their son. However, in order to avoid the more aggressive skating by some of the skaters, she and Mark decided to only skate during the

"couples' skating" times. Poland testified that the couples' skating differed from the "all skating" (the times when everyone was on the skating floor), as there were "less people on the floor," and the skating was at a slower pace. (Tr. 117). At the end of the couples' skating, there was no announcement or pause between the music switching from the couples' skating to the "all skating" time. She testified that as she attempted to leave the skating floor, she saw Brian Stewart skating very fast toward her while chasing another skater. Brian Stewart ran into Poland and knocked her to the floor. He admitted at trial that he knocked Poland to the floor; however, he denied that he was skating very fast or that he was chasing another skater. As a result of the fall, Poland suffered a shattered wrist, which required surgery.

On February 1, 1999, Poland filed an action against St. Margaret alleging that its negligence in failing to properly supervise skaters on the floor, was the proximate cause of her injuries. On February 16, 1999, St. Margaret filed an answer in denial and asserted the affirmative defenses of "comparative fault, fault of the nonparty, Brian Stewart, and assumption of the risk" by Poland. (App. 29, 30).

On January 20–21, 2004, a jury trial was held. The jury returned a verdict in favor of Poland. The verdict form indicated that St. Margaret was found to be fifty percent at fault and Brian was found to be fifty percent at fault. No fault was assigned to Poland, from which St. Margaret appealed.

## DECISION

1. *Final Jury Instruction No. 5*

■ St. Margaret argues that the trial court committed reversible error when it

---

St. Margaret, as St. Margaret is the owner.

**2.** An oral argument was heard and we want to thank counsel for their spirited exchange

and well prepared presentations before the court.

gave Indiana's Pattern Jury Instruction No. 5.41 on incurred risk, designated as Final Instruction No. 5. It contends that the instruction is subjective in nature and amounts to a misstatement of the law, as applied in a roller skating fall case. St. Margaret asserts that "assumption of risks" as found in Indiana Code § 34–31–6–3[3] [Assumption of Risks] (hereinafter "Section 3") is presumed, by roller skaters and, therefore the subjective analysis language of Final Instruction No. 5 is inappropriate because, in effect, it deletes or removes assumption of the risk from consideration by the jury as a complete defense.

■■■ It has long been held that the trial court has broad discretion in conducting a trial and the giving of instructions, and the decision to give an instruction will "only be reversed on a showing of abuse of that discretion." *Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268, 278 (Ind.Ct.App.2001) (citing *Young v. State*, 696 N.E.2d 386, 389 (Ind.1998)). "The

purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Centennial Mortgage*, 745 N.E.2d at 278 (citing *Fox v. State*, 497 N.E.2d 221, 225 (Ind.1986)). "A trial court should give a tendered instruction if the instruction correctly states the law, the evidence supports the instruction, and the substance of the charge is not covered by other instructions." *Lashbrooks v. Schultz*, 793 N.E.2d 1211, 1213 (Ind.Ct.App.2003), *trans. dismissed*, (quoting *Sikora v. Fromm*, 782 N.E.2d 355, 361 (Ind.Ct.App.2002) (citations omitted), *trans. denied* (2003)).

After both sides had concluded presentation of evidence, the trial court and counsel met to discuss final jury instructions. The trial court ruled that it was going to give an instruction regarding Indiana's Limited Liability for Operators for Roller Skating Rinks[4]; St. Margaret had no objection. The instruction reads as follows:

3. I.C. § 34–31–6–3(a) Roller skaters are considered to:
 (1) have knowledge of; and
 (2) assume; the risks of roller skating.
 (b) For purposes of this chapter, risks of roller skating include the following:
 (1) Injuries that result from collisions or incidental contact with other roller skaters or Incidental contact with other roller skaters or other individuals who are properly on the skating surface.
 (2) Injuries that result from falls caused by loss of balance.
 (3) Injuries that involve objects or artificial structures that:
 (A) are properly within the intended path of travel of the roller skater; and
 (B) are not otherwise attributable to an operator's breach of the operator's duties under Section 1 [34–31–6–1] of this chapter.

4. I.C. § 34–31–6–1 (hereinafter "Section 1"): "Duties of operator—An operator shall do all of the following with respect to a roller skating rink:

(1) Post the:
 (A) duties of roller skaters; and
 (B) duties, obligations, and liabilities of the operator; as prescribed in this chapter in at least three (3) conspicuous locations in the roller skating rink.
(2) Maintain the stability and legibility of all signs, symbols, and posted notices required by this chapter.
(3) When the roller skating rink is open for a session, have at least one (1) floor supervisor on duty for every one hundred seventy-five (175) roller skaters who:
 (A) has received appropriate training to carry out the floor supervisor's duties; and
 (B) uses reasonable care in carrying out the floor supervisor's duties.
(4) Maintain the skating surface in proper and reasonably safe condition.
(5) Clean and inspect the skating surface before each skating session.
(6) Maintain in good and safe condition the railings, kickboards, risers, floors, areas open to roller skaters, and walls surrounding the skating surface.

... Duties of operators, Section 1, an operator shall do all of the following with respect to a roller skating rink:

Use reasonable care in supervising roller skaters to comply with the requirements of section 2 of this chapter. 34–31–6–2 Duties of roller skaters, Sec. 2 (hereinafter "Section 2") A roller skater must do all of the following:

(1) Maintain reasonable control of the roller skater's speed and course at all times.

(2) Heed all posted signs and warnings.

(3) Maintain a proper view to avoid other roller skaters and objects.

(4) Accept the responsibility for the following:

> (A) Knowing the range of the roller skater's ability to negotiate the intended direction of travel while on roller skates.

> (B) Skating within the limits of the roller skater's ability.

(5) Refrain from acting in a manner that may cause or contribute to the injury of the roller skater or any other person.

If you find from a preponderance of the evidence that any party violated these statutes on the occasion in question and the violation was without excuse or justification, such conduct would constitute negligence to be assessed against the party.

(App.12–13). Without objection from St. Margaret, the trial court instructed the jury regarding the duties of roller skaters and their assumption of risk while roller skating, as follows:

> (7) Maintain rental skates in good mechanical condition.
> (8) Comply with all applicable state and local fire safety codes, building codes, and other safety codes applicable to a roller skating rink.

... roller skaters are considered to have knowledge of and assume the risks of roller skating, including the risk of injuries that result from collisions or incidental contact with other roller skaters who are properly on the skating surface. The plaintiff's assumption of risk is a complete defense in this case if the defendant complied with the statute that I have described to you relating to the duties of operators. Therefore, if you find ... that the defendant complied with the statute, you must return a verdict for the defendant. If you find that the defendant did not comply with the statute, then you must assess the relative fault between the parties and the non-party, Brian Stewart.

If you decide the defendant violated its statutory duty, which I have just described to you, then you must decide this case according to the Indiana law of comparative fault. The term fault refers to conduct that makes a person responsible, in some degree, for an injury. The type of fault at issue in this case is negligence.

You are required to apportion the fault on a percentage basis between the plaintiff, Barbara Poland, the defendant, St. Margaret Mercy Healthcare Centers, and the non-party, Brian Stewart, to determine whether the plaintiff is entitled to recover damages, and if so, the amount of such recovery.

(App.13–14).

Over the objection of St. Margaret, the trial court verbatim gave Indiana's Pattern Jury Instruction [5] on incurred risk, desig-

> (9) Use reasonable care in supervising roller skaters to comply with the requirements of Section 2 [Ind.Code 34–31–6–2] of this chapter.

**5.** See Indiana's Pattern Jury Instruction No. 5.41.

nated as Final Instruction No. 5, as follows:

The Plaintiff incurs the risk of injury if she actually knew of a specific danger, understood the risk involved, and voluntarily exposed herself to that danger. Incurred risk requires much more than the general awareness of a potential for mishap. Determining whether the plaintiff has incurred the risk of injury requires a subjective analysis focusing upon:

1. The Plaintiff's actual knowledge and appreciation of the specific risk, and

2. The Plaintiff's voluntary acceptance of that risk.

If you find for the plaintiff, Poland, on the issue of liability, then you must determine the amount of money which will fairly compensate plaintiff for those elements of damages which are proved by the evidence to have resulted in the negligence of the defendant.

(App. 15–16).

Specifically, St. Margaret's challenge to Final Instruction No. 5 was as follows:

... Ind.Code [§ ] 34–31–6–3 talks about assumption of risk, and it says roller skaters are considered to have knowledge of and assume the risk of roller skating. It's our position that we don't have a burden of proof on incurred risk. That the statute sets forth that it is there already. And it goes on in the next section of the chapter to say that that assumption of risk is a complete defense if the operator complied with their duties.

If they didn't comply with their duties, then it goes to comparative fault. But there is nothing that says that assumption of risk for the skater goes away. The statute that sets forth the assumption of risk for the skater isn't based upon only in the event that the rink operator complied with all their statute. It just says you are just considered to have assumed the risk if you put wheels on your feet and you go out and skate essentially.

(Tr. 223–224).

Counsel for Poland retorted that if "it is shown that they [St. Margaret] didn't meet their statutory obligation, one of which, is ... mak[ing] sure everybody is skating safely ... the complete defense does not apply and comparative fault does apply. This incurred risk [instruction] is part of comparative fault." (Tr. 225).

■■ "Our foremost objective in construing a statute is to determine and give effect to the intent of the legislature." *Pedraza Ex Rel. Pedraza v. Grande*, 712 N.E.2d 1007, 1010 (Ind.Ct.App.1999). Words and phrases in statutes are to be given their plain and ordinary meaning, unless the legislators intend a different meaning to be applied. *Stansberry v. Howard*, 758 N.E.2d 540, 546 (Ind.Ct.App. 2001). Statutes must be read in pari materia and in harmony with related statutes. *Id.* If the language and the words and phrases in the statute are clear and unambiguous, then we need not interpret the statute but simply apply it as the legislators intended. *Shepherd v. Carlin*, 813 N.E.2d 1200, 1203 (Ind.Ct.App.2004).

Due to the nature of roller skating, the Indiana Legislature imposed specific duties and responsibilities upon roller skating rink operators pursuant to Section 1. Correspondingly, as outlined in Section 2, the Indiana Legislature also imposed certain duties upon roller skaters. Furthermore, the Indiana Legislature has provided that, if a roller skating rink operator is in compliance with the specified duties and responsibilities outlined in Section 1, then pursuant to Indiana Code § 34–31–6–

$4^6$ [Assumption of risk as complete defense; exception.] (hereinafter "Section 4"), the operator is entitled to a complete defense against liability from roller skaters who experience falls due to collisions and incidental contact with other skaters while on the skating rink floor. However, if the evidence establishes that a roller skating rink operator is non-compliant with the statutorily imposed duties and responsibilities of an operator, as found in Section 1, the operator no longer is entitled to a complete defense under Section 4(a), against a skater who sustains an injury related to its non-compliance; but, pursuant to Section 4(b)(1)(2), the matter shifts to a comparative fault analysis under I.C. § 34–51–2–6.[7]

Poland alleged in her complaint that St. Margaret's negligent failure to supervise skaters on the floor was the proximate cause of her injury. The tort claim of negligence has three elements: "(1) a duty owed by the defendant to the plaintiff; 2) a breach of that duty; and 3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind.2004) (citing *Estate of Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind.2003); *Douglass v. Irvin,* 549 N.E.2d 368, 369 (Ind.1990)).

Breach of duty was highly contested in this case. Poland argued that St. Margaret breached a duty owed to her as a skater when it failed to use reasonable care in supervising skaters on the floor. Both sides agreed that it was teen night with a mixture of slow and fast pace skating. Poland testified that throughout the night she observed Brian Stewart skating very fast and aggressively; and, that some of the other skaters appeared to be out of control with no supervision. She and Mark testified that they saw a rink guard playing crack the whip with skaters. She testified that she witnessed four to five skaters holding hands while skating, which was a clear violation of St. Margaret's announced safety rule. Poland skated only during the couples' skating times when the pace was slower and fewer people were on the floor. She testified that there was no pause between the end of the slow skating and the beginning of the all skating. Poland testified that she was prevented from leaving the skating floor through one exit because it was jammed with skaters who were rushing onto the skating floor to participate in the all skating. As she attempted to leave through the next exit, she saw Brian Stewart chasing another boy, both of whom were skating very fast and aggressively toward her.

6. I.C. § 34–31–6–4.(a) Except as provided in subsection (b) and notwithstanding I.C. § 34–51–2–6 concerning comparative fault, the assumption of risk under Section 3 of this chapter is a complete defense to an action against an operator by a roller skater for injuries and property damage resulting from the assumed risks.

(b) The following applies if an operator has violated any one (1) of the operator's duties or responsibilities under section 1 [I.C. 34–31–6–1] of this chapter:

(1) The complete defense against an action against an operator under subsection (a) does not apply.

(2) The provisions of I.C. § 34–51–2–6 apply.

7. I.C. § 34–51–2–6.(a) In an action based on fault that is brought against:

(1) one defendant, or

(2) two (2) or more defendants who may be treated as a single party; the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages

(b) In an action based on fault that is brought against two (2) or more defendants, the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages.

She was unable to make the exit before being knocked to the skating floor by Brian Stewart and breaking her wrist.

St. Margaret countered with testimony from its employees and Brian Stewart. Charles Eyermann (Eyermann), a former floor supervisor, testified that though he worked the night of Poland's injury, he had no independent recollection of the night in question. However, he testified that in general and as a practice, neither he nor other roller skating rink guards would be involved in horseplay with skaters. He also testified that guards would never leave a skater's misbehavior unchecked. He further asserted that if skaters were as rowdy as Poland claims, he believes he would have recalled the evening, and he and the other guards would have instituted St. Margaret's discipline policy. He explained that St. Margaret's disciplinary policy used a three-tiered approach. First, a rule breaking skater would be warned to stop the behavior by a guard blowing a whistle. Second, if the conduct continued, the skater would be made to sit out for a time and then allowed to return. And, third, if the conduct continued, the skater would be made to leave the facility.

Next, Brian Wiersbe (Wiersbe), a roller rink guard on duty on the night in question, testified that he had a vague memory of someone being injured that night. He testified that he had no memory of skaters being out of control and denied he participated in any horseplay with skaters.

Brian Stewart testified that while skating someone bumped him, causing him to lose his balance and he accidentally kicked Poland's skates from under her. He also testified that he was skating at a normal rate of speed, although his speed was faster than Poland's speed. Further, he testified that he was skating alone and denied

chasing or playing tag with any other skater when he knocked Poland down.

In summary, the jury heard evidence regarding St. Margaret's floor guards playing "crack the whip" with skaters; skaters violating St. Margaret's announced safety rules; how Brian Stewart and other skaters were permitted to skate aggressively and very fast; and, the overall lack of supervision of skaters by St. Margaret.

■ The evidence was conflicting; however, it was within the province of the jury to judge the credibility of witnesses and to weigh the evidence. *City of Carmel v. Leeper Elec. Services, Inc.,* 805 N.E.2d 389, 392 (Ind.Ct.App.2004). Whether St. Margaret breached a duty of care is a question of fact to be resolved by the jury. This court cannot engage in the reweighing of the evidence. *Id.*

■ "The well-settled standard by which we review the challenge to jury instructions affords great deference to the trial court. The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury." *Smock Materials Handling Co., Inc. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999) (citing *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1122 (Ind. Ct.App.1995)). Thus, the trial court has the responsibility to inform the jury of the applicable law in order for the jury to comprehend the case and come to a judgment that is correct, just and fair. *See Centennial Mortgage,* 745 N.E.2d at 278. As previously noted, Poland's claim for relief was founded in negligence and was based upon St. Margaret's breach of a duty owed to her as a roller skater. In its pleadings, and during its presentation of evidence and argument to the jury, St. Margaret denied that it was negligent in

its supervision of skaters and asserted the affirmative defenses of: comparative fault, fault of the nonparty, and assumption of the risk by the plaintiff. "The incurred risk defense involves a mental state of venturousness on the part of the actor and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk." *Smock Materials Handling Co., Inc.,* 719 N.E.2d at 402. "Each party to an action is entitled to have the jury instructed upon [their] particular theory of the case." *Wilkinson v. Swafford,* 811 N.E.2d 374, 380 (Ind.Ct.App. 2004). Even though the record on appeal does not contain all of the jury instructions, we note that St. Margaret does not argue that: 1) the definition of incurred risk is an incorrect statement of the law; 2) there was insufficient evidence to support the giving of the instruction; or that 3) the instruction was covered by any other instruction. *See Lashbrooks,* 793 N.E.2d at 1213. If we were to accept St. Margaret's position that the trial court erred in giving an instruction on incurred risk, the jury would have been without a definition of incurred risk or a basis of reference from which the jury would have been able to assess the conduct of the parties herein, upon apportioning fault. Thus, we are not persuaded by St. Margaret's argument that the giving of Final Instruction 5, eliminated from consideration by the jury the defense of "assumption of the risk" by skaters, as a complete defense in favor of the rink operators, pursuant to Section 3. To the contrary, we find that the instruction merely informed the jury of Indiana's definition of incurred risk to aid or assist the jury in arriving at its verdict regarding fault.

Upon the jury reaching its verdict that St. Margaret failed to exercise reasonable care in supervising skaters on the floor, which was the proximate cause of Poland's injury, the jury was compelled to proceed to I.C. § 34–51–2–6 for a comparative fault analysis regarding damages, if any. *See* I.C. § 34–31–6–4(b)(1)(2). Indiana's Comparative Fault Statute requires that fault be apportioned among the parties; thus, the jury had the responsibility of apportioning fault between Poland, St. Margaret, and Brian Stewart, the nonparty. I.C. § 34–51–2–6 *et. seq. See Scott v. Prudential Property & Cas. Ins.,* 561 N.E.2d 812, 814 (Ind.Ct.App.1990). We find the evidence sufficiently probative to support the reasonable finding by the jury that St. Margaret breached a duty to use reasonable care to properly supervise skaters on the floor. Therefore, we do not find that the trial court abused its discretion in giving to the jury Final Instruction No. 5 on incurred risk.

2. *Zero Percent of Fault Apportioned to Poland*

■ St. Margaret's second contention is that pursuant to Indiana's Limited Liability for Operators for Roller Skating Rinks Act, the verdict of the jury was flawed because the jury failed to apportion a percentage of fault to Poland in its verdict. St. Margaret asserts that the flaw in the verdict is directly attributed to the subjective analysis language contained in Final Instruction 5 on incurred risk; and, that pursuant to Section 3, assumption of risks by skater is presumed, and is an "element to be factored into the apportionment of fault among the parties and nonparty" herein. St. Margaret's Br. 11. It further argues that the statutory provisions of Section 4, do not wipe out the legislatively imposed assumption of risk by skaters, and replace it with a subjective analysis for skaters. St. Margaret also contends that if Final Instruction 5 on incurred risk had not been given, then "the jury instructions would have been clear that [Poland] did assume some risk of injury from collisions." St. Margaret's Br.

12. Lastly, it argues that even if the jury had found St. Margaret had breached its duty as an operator, the jury should have been instructed that some risk had to be assessed to Poland, nevertheless.

St. Margaret first raised an objection at the trial court level, arguing that it would be reversible error to give Final Instruction 5 on incurred risk, because: 1) the instruction was laden with subjective analysis language, creating a "burden of proof" they did not have; 2) the instruction would contradict Section 3 and eviscerate St. Margaret's affirmative defense of "assumption of risk" by skaters;" 3) the instruction "invited [the jury] to attribute zero percent of the fault to the plaintiff . . . in clear contradiction of the statute;" and 4) giving the instruction was not "an accurate statement of the law with respect to this case." St. Margaret's Br. 5, 6.

 Unfortunately, there are no Indiana cases to be found interpreting the roller skating statutes and, therefore, we are writing on a blank slate. However, when construing a statute, we attempt to ascertain and give effect to the legislative intent. *Becker v. Four Points Investment Corp.*, 708 N.E.2d 29, 31 (Ind.Ct.App. 1999). And in doing so, we consider the goals of the statute and the reasons and policy underlying its enactment. *MDM Invs. v. City of Carmel*, 740 N.E.2d 929, 934 (Ind.Ct.App.2000). "Where a statute previously has not been construed, the interpretation is controlled by the express language of the statute." *Becker*, 708 N.E.2d at 31. Also, when interpreting a statute, it is important that we recognize what the statute does not say, as well as what it does say, and are careful not to substitute our opinion for that of the Legislature. *Blackmon v. Duckworth*, 675 N.E.2d 349, 352 (Ind.Ct.App.1996).

 We have long held that this court may not interpret a statute that is clear and unambiguous on its face. *Sightes v. Barker*, 684 N.E.2d 224, 227 (Ind.Ct.App.1997), *trans. denied*. Likewise, when a statute is clear and unambiguous, there is no need to apply any rules of construction other than requiring words and phrases to be taken in their plain, ordinary and usual sense. *Benham v. State*, 637 N.E.2d 133, 136 (Ind.1994). However, statutes are to be examined and interpreted as a whole, *MDM Invs.*, 740 N.E.2d at 934. Further, we owe no deference to the trial court's interpretation of a statute, as such is a pure question of law and reviewed de novo by this court. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind.Ct. App.2004), *trans. denied*.

Upon reviewing the relevant statutes herein, we find that the Indiana Legislature has clearly spoken. Pursuant to Section 1, the legislature imposed specific duties and responsibilities upon roller skating rink operators. Further, pursuant to Section 1(3)(1)(B)(9), an operator is required to provide floor supervisors who are responsible to "use reasonable care in carrying out the floor supervisor's duties," including the "use of reasonable care in supervising roller skaters" to comply with Section 2. St. Margaret advances that if the jury should find that the operator has complied with the statutorily imposed duties, assumption of the risks by skaters is a complete defense in favor of operator against an action by a skater for injuries resulting from the assumed risks. On the other hand, St. Margaret concedes that pursuant to Section 4(b)(1)(2), the statute provides that if the jury should find that the operator did not comply with the statutorily imposed duties and responsibilities, the operator is no longer entitled to a complete defense, but that the parties proceed to comparative fault. St. Margaret argues, however, that even in a comparative fault analysis, assumption of risks by

the skater is presumed as an element to be determined as a percentage of fault against the skater, and factored into the apportionment of fault among the parties and non-party, in this case.[8] In conclusion, St. Margaret asserts that the statutory provision found in Section 4(b), does not negate the "legislatively established assumption of risk and replace it with a subjective analysis" for the skater, but, that the language merely provides that the operator is no longer entitled to a complete defense to an action resulting from the assumed risks of the skater.

We disagree with St. Margaret's assertion that Final Instruction 5 would tend to wipe out or remove from consideration by the jury its affirmative defense of "assumption of risk" by the skater. Although, the evidence was often conflicting and breach of duty was vigorously contested, it was within the province of the jury to assess the credibility of witnesses in weighing disputed evidentiary matters, resolving issues of conflict, and, ultimately, to determine fault among the parties. *See City of Carmel,* 805 N.E.2d at 392; *U–Haul International, Inc. v. Mike Madrid Co.,* 734 N.E.2d 1048, 1057 (Ind.Ct.App. 2000). We find that pursuant to Section 4(b)(1)(2), once the jury reached a verdict that St. Margaret had breached a statutorily imposed duty to use reasonable care, the jury was compelled to proceed to the provisions of Indiana Code § 34–51–2–6, for apportionment of fault among the parties.

██ For purposes of comparative fault, the term fault "includes any act or omission that is negligent ... toward the person. The term also includes unreasonable assumption of risk not constituting an en-

forceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages." *See* I.C. § 34–6–2–45(b). As noted, St. Margaret asserted the affirmative defense of assumption of risks by the skater. The record reflects that during voir dire, its counsel asked potential jurors the following series of questions:

1. Do you recognize that there might be some risks involved in roller skating?
2. There may be some risks of collision with [ ] other skaters when at a roller skating rink for instance? Do you recognize those also as risks of roller skating?
3. If the judge instructs you that the law says that a roller skater assumes the risks of roller skating, do either one of you have any difficulty in applying that law?

Poland's Br. 18. Subsequently, in its opening statement to the jury, counsel for St. Margaret made the following comments:

This is a case about assumption of risk ... she knew there were risks involved in roller skating. She knew that she could have fallen and injured herself while roller skating. She knew that there was a risk of collision with other skaters when you are at a skating rink with a bunch of people skating and that could cause her to fall and injure herself. She went anyway.

Poland's Br. 18.

In its closing argument to the jury, counsel for St. Margaret made the following comments:

Let's look at what the evidence is on incurred risk. The plaintiff testified

---

8. During oral argument, St. Margaret asserted that had the jury apportioned even a nominal percentage of fault to Poland in their verdict, it would not have appealed that issue

because it would be apparent that the jury considered assumption of risks as a defense in apportioning fault among the parties.

that she watched for three to three and a half hours before this incident occurred and she looked and watched kids skating out of control. That she noticed that the skate guards weren't doing anything. She had all of this awareness. It was all there in her head. Her and her husband talked about it before she went out on the skating rink when this happened.

So with knowing all of that, she went out on the rink anyway and she skated out anyway. So that's voluntarily accepting that risk. Even if that doesn't convince you, that doesn't get you there, then you have her own testimony yesterday where she said that before this ever happened she commented to her husband, "Someone is going to get hurt tonight." What better evidence can you have that she had knowledge and appreciation of the risk that was there? She mentioned it specifically and then she went out on the rink and she skated anyway.

Poland's Br. 18–19. We are inclined to agree with Poland that the aforementioned questions and comments made by counsel would tend to give notice to a reasonable jury that St. Margaret was relying upon the defense of "assumption of risk" by the skater, as the capstone of its defense in this case.

 Generally, incurred risk is a question of fact for the jury. *Town of Highland*, 659 N.E.2d at 1121. Apportionment of fault is also a question of fact for the jury to determine. *City of Crawfordsville v. Price*, 778 N.E.2d 459, 463 (Ind.Ct. App.2002) (citing *McKinney v. Pub. Serv. Co. of Ind., Inc.*, 597 N.E.2d 1001, 1008 (Ind.Ct.App.1992)), *trans. denied*. "In determining whether a plaintiff incurred the risk of his or her injuries, a subjective analysis is required focusing on the plaintiff's actual knowledge and appreciation of

the specific risk involved and voluntary acceptance of that risk." *Town of Highland*, 659 N.E.2d at 1121. It was therefore within the province of the jury to determine what percentage of fault, if any, should be apportioned among the parties. St. Margaret directs us to no authority which states a plaintiff must be apportioned some percentage of fault under comparative fault; neither have we found any such authority. Further, we do not find that the jury was somehow confused or misled by the language of the instruction into believing it was not to apportion any fault to Poland. The jury heard conflicting evidence regarding the behavior and conduct of the parties and nonparty, and apportioned fault as it believed the evidence dictated. We hold that the jury's verdict apportioning zero percentage of fault to Poland is supported by the evidence and the law.

We affirm.

FRIEDLANDER, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring in result.

I agree with the result reached by the majority, but I respectfully disagree with its analysis and conclusion as to the jury instruction on incurred risk. In particular, I disagree with the majority's conclusion that the trial court properly gave Final Instruction No. 5, which contained an element of subjectivity with respect to the issue of incurred risk.

Indiana Code section 34-31-6-3 establishes an objective standard for a roller skater's assumption of risk: "(a) Roller skaters are considered to: (1) have knowledge of; and (2) assume; the risks of roller skating." This statutory language clearly and unambiguously indicates that assumption of the risk is presumed, and

nothing in the statute indicates that a roller skater must have "actual knowledge" of a specific risk to be found to have incurred that risk. Moreover, the legislature did not place a qualification on this provision limiting the assumption of risk to injuries that occurred as a result of only those collisions not otherwise attributable to the operator's breach of its duties. I believe, therefore, that in light of the statute's clear language, the trial court erred in giving Final Instruction No. 5 because it included an element of subjectivity and was, accordingly, a misstatement of the law.

Although I conclude that the trial court erred in giving this jury instruction, I believe it to be harmless error in light of the considerable evidence indicating that Mrs. Poland's injury was the fault of St. Margaret and Brian Stewart. Thus, while I disagree with the majority's analysis, I concur in the result.