## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2020, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Talisha Griffin
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.R.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

September 30, 2020

Court of Appeals Case No.
20A-JV-860

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Geoffrey A. Gaither, Magistrate

Trial Court Cause No.
49D09-2001-JD-77

**Mathias, Judge.**

Seventeen-year-old J.R. was adjudicated a delinquent child in Marion Superior Court for committing Class A misdemeanor dangerous possession of a firearm and what would be Class A misdemeanor resisting law enforcement if committed by an adult. J.R. now appeals and argues that his true finding for dangerous possession of a firearm should be vacated because he cannot be charged with or adjudicated a delinquent for an act that is only an offense if committed by a child.[1]

We affirm.

## Facts and Procedural History

At approximately 3:00 a.m. on January 26, 2020, Indianapolis Metropolitan Police Department ("IMPD") Officer Cory Lindley and Officer Fulton[2] were seated in a patrol car in the parking lot of a business located on the east side of Indianapolis. They were writing a report of an armed robbery of a fast-food restaurant that had occurred earlier in the officers' shift. The suspects involved

---

[1] The question before us was recently addressed by this court in *K.C.G. v. State,* 137 N.E.3d 1044 (Ind. Ct. App. 2019), *vacated.* Our supreme court granted transfer in *K.C.G.* on April 16, 2020, three days after the Notice of Appeal was filed in the instant case. Our supreme court held oral argument in *K.C.G.* on June 11, 2020, and has not yet issued an opinion. This court's opinion in *K.C.G.* has no precedential value. *See* Ind. Appellate Rule 58(A) ("If transfer is granted, the opinion . . . of the Court of Appeals shall be automatically vacated" except for opinions or portions thereof that are (1) expressly adopted and incorporated by reference or (2) summarily affirmed by our supreme court.); *Meyer v. Biedron*, 667 N.E.2d 752, 752–53 (Ind. 1996) ("[O]nce transfer is granted, the Court of Appeals' opinion or judgment is vacated and held for naught." (internal quotation omitted)). We note only that in *K.C.G.*, the panel also addressed the sufficiency of the evidence supporting the juvenile's adjudication for Class A misdemeanor dangerous possession of a firearm.

[2] Officer Fulton's first name was not provided at the fact-finding hearing.

in the robbery were young males, one of which was wearing a distinctive designer jacket.

[4] As the officers wrote their report, they noticed four males approach the entrance to a nearby gas station – two from each side of the building. One of the males was wearing the distinctive jacket that matched the description of the subject involved in the robbery. When the young men saw the officers, they walked away from the entrance to the gas station and proceeded around the back of the building. Officer Lindley called for assistance and devised a plan to stop the four young men.

[5] IMPD Officer Matthew Harris responded to the call for assistance. The officers then drove in the direction in which the young men had walked, with Officer Harris driving ahead of Officers Lindley and Fulton. The officers traveled just east of the gas station and turned south onto Bradley Street. There, they observed the four young men walking southbound on the west side of the street.

[6] Officer Harris pulled his patrol car parallel to and in front of the group; Officers Lindley and Fulton pulled up behind the group. Officer Harris noticed that one of the individuals in the group was carrying a long gun. Officer Harris activated his emergency lights and then exited his patrol car.

[7] As Officers Lindley and Fulton approached, Officer Lindley observed another individual in the group "run and duck" behind a red parked car. Tr. p. 9. Officer Lindley immediately exited his patrol car, drew his service weapon, and illuminated the individual with his gun light. Officer Lindley then saw that the

individual had placed an AR-15 rifle on the ground behind the parked car. Officer Lindley ordered that individual and the two other males who were standing nearby to put their hands up. The three complied with the command. However, the fourth male – the individual who Officer Harris observed carrying a long gun and who was later identified as J.R. – fled the scene.

[8] Officer Harris pursued J.R. on foot. When Officer Harris began the pursuit, he noticed that J.R. no longer had the weapon in his hand. J.R. ran down the block, jumped a chain link fence, and climbed into a dumpster that sat behind a drugstore. He was apprehended shortly thereafter by a K9 officer and was returned to where the officers first detained the individuals.

[9] As the officers investigated the scene, they found several guns. The AR-15 rifle and two other guns were recovered from underneath the parked car. The officers also recovered a second rifle that was found in a residential yard on the other side of a fence that was close to the parked car. Officer Harris testified that the second rifle was found near where J.R. had been standing when the officers first located the young men on Bradley Street.

[10] On January 27, 2020, the State filed a petition alleging J.R. was a delinquent for committing the offenses of dangerous possession of a firearm and resisting law enforcement. J.R. denied the allegations. A fact-finding hearing was held on February 24, at the conclusion of which the juvenile court entered a true finding for both offenses. On March 16, a disposition hearing was held. That same day, the juvenile court issued a dispositional order adjudicating J.R. a delinquent

and committing him to the Indiana Department of Correction for a recommended term of six months. J.R. now appeals his delinquency adjudication for Class A misdemeanor dangerous possession of a firearm.

## Discussion and Decision

[11] J.R. argues that he cannot be charged with or adjudicated a delinquent for dangerous possession of a firearm because under the delinquency statute, juvenile delinquency adjudications are expressly limited to acts committed by a child that "would be [offenses] if committed by an adult[.]" Ind. Code § 31-37-1-2. Class A misdemeanor dangerous possession of a firearm is an offense that can only be committed by a child and not by an adult. Thus, according to J.R., dangerous possession of a firearm cannot be a delinquent act.

### I. Standard of Review

[12] The question raised by J.R. is a pure question of statutory interpretation and, therefore, a de novo standard of review applies. *See In re M.W.*, 913 N.E.2d 784, 786 (Ind. Ct. App. 2009). We give no deference to the trial court's decision; rather, we follow the cardinal rule of statutory construction: if the statute is unambiguous, we need not and do not interpret the statute but apply its plain and clear meaning. *Id.* at 786–87. If the statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we must determine legislative intent and interpret the statute to give effect to that intent. *Maroney v. State*, 849 N.E.2d 745, 748 (Ind. Ct. App. 2006). Statutes must be read in harmony with

related statutes. *St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland*, 828 N.E.2d 396, 402 (Ind. Ct. App. 2005), *trans. denied*.

[13] When construing a statute, we endeavor to give effect to the intent of the General Assembly. *Id.* We presume that the legislature intended the statutory language to "be applied logically and not to bring about an unjust or absurd result." *Alvey v. State*, 10 N.E.3d 1031, 1033 (Ind. Ct. App. 2014), *aff'd on reh'g,* 15 N.E.3d 72. In order to determine and implement the General Assembly's intent, we must consider the statute as a whole, "read[ing] sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute." *Id.* In addition to the language itself, we may look "to the nature and subject matter of the act and the object to be accomplished thereby[.]" *Id.*

[14] "Statutes relating to the same subject matter are *in pari materia* (on the same subject) and should be construed together so as to produce a harmonious statutory scheme." *Jones v. State*, 928 N.E.2d 285, 287 (Ind. Ct. App. 2010). "As a general rule, there is a presumption that the Legislature in enacting a particular piece of legislation has in mind existing statutes covering the same subject." *Simmons v. State*, 773 N.E.2d 823, 826 (Ind. Ct. App. 2002) (quoting *Citizens Action Coal. of Ind. v. Pub. Serv. Comm'n of Ind.*, 425 N.E.2d 178, 184 (Ind. Ct. App. 1981)), *trans. denied*.

## II. Dangerous Possession of a Firearm

Before addressing the question raised by J.R., we first set forth the language of the statutes that are relevant to the question before us. Indiana Code section 35-47-10-5, the statute upon which the offense of dangerous possession of a firearm is based, reads:

> (a) *A child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in section 1 of this chapter commits dangerous possession of a firearm, a Class A misdemeanor.*[3] However, the offense is a Level 5 felony if the child has a prior conviction under this section or has been adjudicated a delinquent for an act that would be an offense under this section if committed by an adult.
>
> (b) A child who knowingly or intentionally provides a firearm to another child whom the child knows:
>
> > (1) is ineligible for any reason to purchase or otherwise receive from a dealer a firearm; or
> >
> > (2) intends to use the firearm to commit a crime;
>
> commits a Level 5 felony. However, the offense is a Level 3 felony if the other child uses the firearm to commit murder (IC 35-42-1-1).

---

[3] Indiana Code section 35-47-10-1 provides a number of situations under which a child cannot be found to have committed Class A misdemeanor dangerous possession of a firearm, including use of the firearm for hunting, at a shooting range, or with a parent's permission.

Ind. Code § 35-47-10-5 (emphasis added). For purposes of this statute, a "child" means "a person who is less than eighteen (18) years of age." Ind. Code § 35-47-10-3.

[16] Indiana Code section 31-37-1-2 states in its entirety: "A child commits a delinquent act if, before becoming eighteen (18) years of age, the child commits an act that would be an offense if committed by an adult, except an act committed by a person over which the juvenile court lacks jurisdiction under IC 31-30-1." Indiana Code section 31-30-1-4 provides that the juvenile court does not have jurisdiction over individuals at least sixteen years old who are charged with certain crimes, including dangerous possession of a firearm by a child, "if charged as a felony[.]" Ind. Code § 31-30-1-4(a)(9). Finally, Indiana Code section 31-30-1-1 confers original jurisdiction on the juvenile court and lists the types of proceedings over which a juvenile court has exclusive jurisdiction – including the categories of:

> (1) Proceedings in which a child, including a child of divorced parents, is alleged to be a delinquent child under IC 31-37.
>
> * * *
>
> (14) Other proceedings specified by law.

[17] We now turn to J.R.'s argument that based upon the plain language of the dangerous possession of a firearm statute, the offense cannot be a delinquent act because it is not an offense that can be committed by an adult. The State counters that J.R.'s argument "ignores other, equally plain statutory language

that leads to the contrary conclusion[,]" and "does not construe the juvenile jurisdiction statutes liberally to give effect to the legislature's intent for juvenile criminal conduct to be treated as delinquent conduct." Appellee's Br. at 9, 13. The State contends that even if this court were to find Indiana Code section 31-37-1-2 inapplicable, the juvenile court still has jurisdiction to adjudicate J.R. a delinquent for dangerous possession of a firearm under Indiana Code section 31-30-1-1(14) – "[o]ther proceedings specified by law."

[18] In *C.C. v. State*, 907 N.E.2d 556 (Ind. Ct. App. 2009), a panel of this court addressed an issue analogous to the one presented by J.R. The panel in *C.C.* examined whether a juvenile court committed fundamental error by exercising jurisdiction over a delinquency petition that charged C.C. with dangerous possession of a firearm – a crime for which an adult could not be charged. *Id.* at 558–59. In reaching its decision, our court looked to Indiana Code section 31-30-1-1 then reasoned: "Clearly, the legislature recognized that the list [of proceedings over which a juvenile court has exclusive jurisdiction] was not exhaustive and intended that juvenile jurisdiction extend to other laws applicable to children. In our view, Indiana Code [s]ection 35-47-10-5 fits within this category." *Id.* at 558.

[19] The panel then examined Indiana Code section 31-30-1-4, noting that prior to 2008, the statute (in relevant part) provided that the juvenile court lacked jurisdiction over a child's violation of "IC 35-47-10 (children and firearms)" if the child was at least sixteen years old. Ind. Code § 31-30-1-4 (2006). Specifically,

prior to 2008, Indiana Code Section [31-30-1-4] said that the juvenile court does not have jurisdiction over a child's alleged violation of "IC 35-47-10 (children and firearms)[.]" The legislature did not make a distinction between the possible felony and misdemeanor charges under that statute, although the title of Indiana Code Section 31-30-1-4 was (and remains) "Juvenile court lacks jurisdiction over individuals at least 16 years old committing certain *felonies;* retention of jurisdiction by court having adult criminal jurisdiction[.]" (Emphasis added.) The other crimes listed in the statute, including murder, kidnapping, rape, and carjacking, are chargeable *only* as felonies if committed by an adult.

In 2008, the General Assembly amended this statute. It now says that the juvenile court does not have jurisdiction over a child's alleged violation of dangerous possession of a firearm "if charged as a felony[.]" *By specifically excluding the felony portion of Indiana Code Section 35-47-10-5 from juvenile jurisdiction, it follows that the misdemeanor portion is not excluded and thus is subject to juvenile jurisdiction.* As discussed above, it is one of the "[o]ther proceedings specified by law" over which the juvenile court has exclusive jurisdiction. Ind. Code § 31-30-1-1.

*Id.* at 558–59 (emphasis added).

[20] The panel then concluded:

From a common sense standpoint, if we were to follow C.C.'s reasoning to its illogical conclusion, his misdemeanor violation of the firearm statute would not fall within the jurisdiction of either the juvenile court or the adult criminal court and thus would go unpunished. We do not think this was the legislature's intent. As the State points out, "[i]t is a rule of statutory interpretation that courts will not presume the legislature intended to do a useless thing or to enact a statute that is a

nullity." *N. Indiana Bank and Trust Co. v. State Bd. Of Finance*, 457 N.E.2d 527, 532 (Ind. 1983).

*Id.* at 559.

[21] We agree with the reasoning and result in *C.C.* Like the panel in C.C., we conclude that J.R. can be charged with and adjudicated a delinquent for Class A misdemeanor dangerous possession of a firearm despite the fact that it is only an offense if committed by a child and cannot be committed by an adult. To find otherwise would ignore Indiana Code section 31-30-1-4 where the General Assembly explicitly removed from the juvenile court's jurisdiction felony dangerous possession of a firearm for individuals who are least sixteen years old.

## Conclusion

[22] Based on the plain language of the dangerous possession of a firearm statute, J.R. could be adjudicated a delinquent. We therefore affirm the juvenile court's delinquency adjudication.

Bradford, C.J., and Najam, J., concur.